**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| SCOTT LOFTIS, <br><br> *Plaintiff*, <br><br> v. <br><br> RICHARD ROSE, in his official capacity as Chairman of the Oklahoma Council on Judicial Complaints; AGNELA AILLES BAHM, in her official capacity as Vice Chairwoman of the Oklahoma Council on Judicial Complaints, and ZACK TAYLOR, in his official capacity as a member of the Oklahoma Council on Judicial Complaints, <br><br> *Defendants*. | Case No. _____ <br><br> **VERIFIED COMPLAINT** |

Plaintiff, Scott Loftis, brings this action under the First Amendment to the United States Constitution, *see* 42 U.S.C. §1983, against Defendants and allege as follows:

**INTRODUCTION**

1.     "It is simply not the function of government to select which issues are worth discussing or debating in the course of a political campaign." *Brown v. Hartlage*, 456 U.S. 45, 60 (1982) (cleaned up). The United States Supreme Court has "never allowed the government to prohibit candidates from communicating relevant information to voters during an election." *Republican Party of Minnesota v. White*, 536 U.S. 765, 785 (2002).

2.     Yet Oklahoma law, the Code of Judicial Conduct, and opinions of the Oklahoma Judicial Ethics Advisory Panel deter, suppress, and punish campaign speech that would otherwise help educate voters in judicial races.

3.     ***First***, Oklahoma law prohibits "a candidate for judicial office" from "making publicly known in his campaign material or speeches, or knowingly permitting others to make publicly known, either directly or by implication, his political party affiliation. 20 OKLA. STAT. § 1404.1(3). Violations of this statute can result in removal from office and potentially disqualify them from consideration in the future. *Id.* This content-based restriction on political speech violates the First Amendment.

4.     ***Second***, Rule 4.1(A)(12)-(13) of the Rules for Judicial Conduct prohibit candidates for judicial office from "mak[ing] any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court; or in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office." OKLA. STAT. CJC Rule 4.1(A)(12)-(13). This content-based restriction on political speech violates the First Amendment.

5.     ***Third***, the Oklahoma Judicial Ethics Advisory Panel has issued orders interpreting the preceding provision even more broadly to advise judges and judicial candidates it is against the law for: (1) a judge to permit a book to describe the judge as a "Conservative Hero," Judicial Ethics Opinion 2018-7; and (2) a candidate for judicial office to describe themself as a "Conservative." Judicial Ethics Opinion 2026-2. While these advisory opinions are not binding on the Oklahoma Supreme Court, the Council on Judicial Complains, or the Court on the Judiciary, they nevertheless pose a great risk of chilling campaign speech that would otherwise educate voters when casting informed ballots. Judicial

Ethics Opinions 2018-7 and 2026-2 are content-based restrictions on pollical speech and violates the First Amendment.

6. Scott Loftis's political and campaign speech is chilled by the foregoing law, rule, and advisory opinions governing judicial candidates. All three should be declared unconstitutional and enjoined.

## JURISDICTION AND VENUE

7. This action arises under the First Amendment to the United States Constitution and is brought via 42 U.S.C. §§1983 and 1988.

8. The Court has subject-matter jurisdiction under 28 U.S.C. §§1331 and 1343.

9. Venue is proper under 28 U.S.C. §1391 because all Defendants reside here and a substantial part of the events or omissions giving rise to the claims occurred here.

## PARTIES

10. Plaintiff, Scott Loftis, is a lawyer who resides and practices in Ponca City, Oklahoma. He is currently a candidate for District Judge in District 8 which covers Kay and Noble Counties.

11. The Council on Judicial Complaints is a state executive agency organized and existing under the laws of Oklahoma and its office in Oklahoma City. It is tasked with investigating allegations of judicial misconduct.

12. Defendant Richard Rose is Chairman of the Council on Judicial Complaints. Rose is responsible for investigating allegations of judicial misconduct—including that of judicial candidates—and recommending discipline to the Oklahoma Supreme Court or Court on the Judiciary. Rose is sued in his official capacity.

3

13.     Defendant Angela Ailles Bahm is Vice Chairwoman of the Council on Judicial Complaints. Bahm is responsible for investigating allegations of judicial misconduct—including that of judicial candidates—and recommending discipline to the Oklahoma Supreme Court or Court on the Judiciary. Bahm is sued in her official capacity.

14.     Defendant Zack Taylor is a Member of the Council on Judicial Complaints. Taylor is responsible for investigating allegations of judicial misconduct—including that of judicial candidates—and recommending discipline to the Oklahoma Supreme Court or Court on the Judiciary. Taylor is sued in his official capacity.

## BACKGROUND

### 1. Candidates for Judicial Office and Their First Amendment Rights

15.     "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

16.     "The political speech of candidates is at the heart of the First Amendment, and direct restrictions on the content of candidate speech are simply beyond the power of government to impose." *Republican Party of Minnesota v. White*, 536 U.S. 765, 793 (2002) (Kennedy, J.). "The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010).

17.     First Amendment protections are at their zenith during campaigns for public office. "The First Amendment 'has its fullest and most urgent application' to speech uttered

4

during a campaign for political office." *Id.* (cleaned up) (citing *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989).

18.    The standards for judicial conduct promulgated by a State "may not be used by the State to abridge the speech of aspiring judges in a judicial campaign." *White*, 536 U.S. at 794 (Kennedy, J.). States may not "censor what the people hear as the undertake to decide for themselves which candidate is most likely to be an exemplary judicial officer." *Id.*

## 2. Judicial Elections in Oklahoma

19.    Since the late 1960s, district judges in Oklahoma have been selected via non-partisan elections. OKLA. CONST. art. VII, § 9.

20.    "Contested elections generally entail campaigning." *White,* 536 U.S. at 789 (O'Connor, J.), which means candidates for judicial office must communicate to voters why voters should vote for them.

21.    While the Rules of Judicial Conduct are well-intentioned in trying to eliminate even the appearance of bias, "the State has voluntarily taken on the risk to judicial bias" by choosing to "select its [district] judges by popular elections instead of through an appointment system." *Id.*

22.    As the majority put it in *White*, 536 U.S. at 787, "[t]here is an obvious tension between" Oklahoma's Constitution which requires district judges be elected and Oklahoma law that severely limits their political speech.

23.    Rather than resolve this tension in favor of protecting First Amendment freedoms, Oklahoma law chose—and continuities to choose—censorship in an effort to

5

promote the Oklahoma Supreme Court's idea of "impartiality." This contradicts the plain text of the First Amendment and the holding in *White*.

24.    Oklahoma law cannot "leave[] the principle of elections in place while preventing candidates from discussing what the elections are about." *Id.* at 788. To do so is to paramount to "state-imposed voter ignorance." *Id.*

### 3.  The Oklahoma Statutes

25.    In 1979, the Oklahoma Legislature passed what would become 20 OKLA. STAT. § 1404.1 which dictates how candidates for judicial office must conduct themselves during a judicial race.

26.    That section prohibits a candidate for judicial office from "making publicly known in his campaign material or speeches, or knowingly permitting others to make publicly known, either directly or by implication, his political party affiliation." *Id.* at (3).

27.    The speech this section seeks to censor is content-based political speech.

28.    While it leaves candidates free to discuss their education or career accomplishments, it prevents them from identifying—or even *permitting others* to identify them—with a political party. According to the Judicial Ethics Advisory Panel, this would also prohibit a candidate from self-identifying as a conservative.

29.    It is unclear what other speech might "out" someone as affiliated with a particular party. Judicial candidates are left to wonder if they can claim affiliation with the Federalist Society, certain religious sects, or the ACLU.

30.     Candidates for judicial office who violate this section of law are subject to "removal by the Court on the Judiciary . . . with or without disqualification to hold a judicial office in the future." *Id.*

### 4. Oklahoma's Code of Judicial Conduct

31.     On top of Section 1404.1(3)'s censorship of judicial candidates, the Oklahoma Code of Judicial Conduct (the "Code") has adopted policies from the American Bar Association's Model Code of Judicial Conduct—some of which have already been struck down as unconstitutional.

32.     Rule 4.1(12)-(13) of the Code prohibits judges from "mak[ing] any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court; or in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office." OKLA. STAT. CJC Rule 4.1(A)(12)-(13).

33.     This rule might be fine if not for the opinions of the panel which interpret this rule to prohibit a candidate for judicial office from identifying as a "conservative."

34.     Therefore, the speech this section seeks to censor is content-based political speech.

35.     Rule 4.1 applies not only to sitting judges but candidates for judicial office and subjects them to discipline if the candidate breaks a rule. OKLA. STAT. CJC "Scope."

**5. Decisions of the Judicial Ethics Advisory Panel**

36.    The Oklahoma Supreme Court created the Judicial Ethics Advisory Panel (the "Panel") in February of 1998 and serves as an "advisory committee for justices, judges, retired or active retired justices and judges, and bona fide candidates for judicial offices seeking opinions concerning the compliance of an intended future course of conduct with the Code of Judicial Conduct." 5 OKLA. STAT. Appendix 4D Rule 1.

37.    While the opinions of the Panel are not binding on the Oklahoma Supreme Court or the Council on Judicial Complaints (the "Council"), the Council may take into account the fact that a judge or candidate sought and relied on an opinion by the Panel when determining whether to recommend discipline to a judge or candidate for judicial office. 5 OKLA. STAT. Appendix 4D Rule 9.

38.    In the Panel's first year—four years prior to the United States Supreme Court's decision in *White*—it released JEAP Opinion 98-10[1] which the Panel still relies on for the proposition that a "judicial candidate must refrain from any statement expressing a philosophy, attitude, any mental predisposition, that would create an impression of how a judicial candidate might decide cases." The notion that a judicial candidate cannot express something as basic as a *philosophy* was invalidated by *White*.

39.    More recently, in JEAP Opinion 2018-7, the Panel opined that it would be an ethical violation if Judge Bill Graves—who had already served two stints in the Oklahoma

---

[1] An index of Oklahoma Judicial Ethics Advisory Panel decisions can be found at https://www.oscn.net/applications/oscn/Index.asp?ftdb=STOKJE&level=1.

8

Legislature as a Republican—knowingly permitted "the publication of an article" that referred to him as "Conservative Hero."

40.     The Panel concluded that "in Oklahoma, "conservative" means a person affiliated with the Republican party," so Judge Graves could face discipline for *someone else's* publication which referred to him as a "conservative." JEAP Opinion 2018-7.

41.     Finally, this month the Panel released JEAP Opinion 2026-2, in which it once again said a candidate for judicial office cannot identify as a conservative.

### 6. The Effect of Oklahoma These Policies on Scott Loftis

42.     Scott Loftis is suffering concrete injuries as a direct result of the unconstitutional law and policies described above. He wants to engage in speech covered by the foregoing law and policies, but he credibly fears his efforts to communicate what differentiates him from the other candidates to voters will be considered a violation of the law and subject him to discipline.

43.     Loftis is an attorney in private practice in Ponca City where he has practiced for over twenty years.

44.     Loftis is politically conservative, though at various times he has been a registered Republican, Libertarian, and Independent. At this time, he is a registered Republican.

45.     Loftis wants to position himself as the "conservative, law-and-order" candidate in the race for District Judge.

46.     In fact, he has, at times, described himself as the most conservative candidate in the race.

47.   He has done so relying on the decision by the United States Supreme Court in *White*.

48.   Nevertheless, it appears one of his opponents has taken issue with those statements and sought the advisory opinion from the Judicial Ethics Advisory Panel.

49.   Loftis is concerned that if referring to himself as a "conservative" violates the law, other statements could potentially also violate the law. For instance, he fears if he were to say he is a Southern Baptist, that could potentially also violate the law.

50.   Loftis wants to engage in open and robust intellectual debate regarding his qualifications, views, and beliefs that he believes differentiates himself from his opponents.

51.   Loftis wants to be engage with voters on a full range of issues including his political views that might "out" him as a Republican.

52.   But Oklahoma law, as well as the Code of Judicial Conduct (as interpreted by the Judicial Ethics Advisory Panel) makes him reluctant to have this conversation in the community that is expected to cast an informed vote for district judge.

53.   Loftis has not fully express himself or talk about certain issues because he knows that the other candidates in the race will likely report him to the Council on Judicial Complaints and he will be disciplined accordingly.

## COUNT I
### Violation of the First Amendment
### (20 OKLA. STAT. § 1401.1(3))

54.   Plaintiff repeats and realleges each of the prior allegations in this complaint.

55.   The First Amendment prohibits judicial standards from being "used by the State to abridge the speech of aspiring judges in a judicial campaign." *White*, 536 U.S. at 794

(Kennedy, J.). These speech restrictions chill speech. *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). "[C]andidates have a constitutional right to portray themselves as a member of a political party." *Id.* at 311.

56.     There is no "judicial candidate" exception to the First Amendment. "The State may not regulate the content of candidate speech merely because the speakers are candidates." *White*, 536 U.S. at 796 (Kennedy, J.).

57.     Section 1404.1(3) is a content-based restriction on political speech—a category of expression where the First Amendment has "its fullest and most urgent application." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

58.     "The First Amendment's hostility to content-based regulation extends . . . to prohibition of public discussion of an entire topic." *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) (cleaned up). For instance, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposes no limits on the political viewpoints that could be expressed. *Id.* So too here.

59.     Under current Oklahoma law, candidates for judicial office are allowed to discuss their qualifications for office *except* to identify with a political party. This is a classic content-based restriction. For example, a candidate could say "elect me because I'm the best candidate," but not "I'm the best candidate because I'm the Republican in the race." Such a distinction cannot satisfy any level of scrutiny, much less strict scrutiny.

60.     Content-based restrictions on political speech like that in Section 1401.1(3) "are expressly and positively forbidden by the First Amendment. *White*, 536 U.S. at 795

(cleaned up). If statements made by a judge cast doubt on their neutrality or qualifications, "democracy and free speech are their own correctives." *Id.*

61.    The Supreme Court has consistently recognized the "substantial and expansive threats to free expression posed by content-based restrictions." *United States v. Alvarez*, 567 U.S. 709, 717 (2012). "Content-based regulations" are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Accordingly, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

62.    Defendants enforce this unconstitutional statute under color of state law.

## COUNT II
### Violation of the First Amendment
### (Code of Judicial Conduct)

63.    Plaintiff repeats and realleges each of the prior allegations in this complaint.

64.    The First Amendment prohibits judicial standards from being "used by the State to abridge the speech of aspiring judges in a judicial campaign. *White*, 536 U.S. at 794 (Kennedy, J.). These speech restrictions chill speech. *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). "[C]andidates have a constitutional right to portray themselves as a member of a political party." *Id.* at 311.

65.    There is no "judicial candidate" exception to the First Amendment. "The State may not regulate the content of candidate speech merely because the speakers are candidates. *White*, 536 U.S. at 796.

66.    Rule 4.1(A)(12)-(13) of the Oklahoma Code of Judicial Conduct is a content-based restriction on political speech—a category of expression where the First Amendment has "its fullest and most urgent application." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

67.    "The First Amendment's hostility to content-based regulation extends . . . to prohibition of public discussion of an entire topic." *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) (cleaned up). For instance, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposes no limits on the political viewpoints that could be expressed. *Id.* So too here.

68.    Candidates for office are prohibited from expressing all kinds of views that might come before them in the future. This is a classic content-based restriction. Under this rule, a candidate could not even say, "I'm pro-life." Such a distinction cannot satisfy any level of scrutiny, much less strict scrutiny.

69.    Content-based restrictions on political speech like that in 4.1(A)(12)-(13) "are expressly and positively forbidden by the First Amendment. *Id.* at 795 (cleaned up). If statements made by a judge cast doubt on their neutrality or qualifications, "democracy and free speech are their own correctives." *Id.*

70.    The Supreme Court has consistently recognized the "substantial and expansive threats to free expression posed by content-based restrictions." *United States v. Alvarez*, 567 U.S. 709, 717 (2012). "Content-based regulations" are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Accordingly, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly

tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

71.     Defendants enforce this unconstitutional rule under color of state law.

## COUNT III
### Violation of the First Amendment
### (Opinions of the Panel)

72.     Plaintiff repeats and realleges each of the prior allegations in this complaint.

73.     The First Amendment prohibits judicial standards from being "used by the State to abridge the speech of aspiring judges in a judicial campaign. *White*, 536 U.S. at 794 (Kennedy, J.). These speech restrictions chill speech. *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). "[C]andidates have a constitutional right to portray themselves as a member of a political party." *Id.* at 311.

74.     There is no "judicial candidate" exception to the First Amendment. "The State may not regulate the content of candidate speech merely because the speakers are candidates. *White*, 536 U.S. at 796.

75.     JEAP Opinions  2018-7 and 2026-2 are content-based restrictions on political speech—a category of expression where the First Amendment has "its fullest and most urgent application." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

76.     "The First Amendment's hostility to content-based regulation extends . . . to prohibition of public discussion of an entire topic." *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) (cleaned up). For instance, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposes no limits on the political viewpoints that could be expressed. *Id.* So too here.

14

77.     Content-based restrictions on political speech like that in JEAP Opinions 2018-7 and 2026-2 "are expressly and positively forbidden by the First Amendment. *Id.* at 795 (cleaned up). If statements made by a judge cast doubt on their neutrality or qualifications, "democracy and free speech are their own correctives." *Id.*

78.     The Supreme Court has consistently recognized the "substantial and expansive threats to free expression posed by content-based restrictions." *United States v. Alvarez*, 567 U.S. 709, 717 (2012). "Content-based regulations" are "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Accordingly, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

79.     Defendants enforce these unconstitutional opinions under color of state law.

**WHEREFORE**, Scott Loftis respectfully requests this Court enter judgement in favor of Plaintiff and against Defendants and provide the following relief:

A.  A declaratory judgement that 20 OKLA. STAT. § 1404.1(3) violates the First Amendment;

B.  A declaratory judgment that Rule 4.1(A)(12)-(13) of the Code of Judicial Conduct violates the First Amendment;

C.  A declaratory judgment that JEAP Opinions 2018-7 and 2026-2 violate the First Amendment to the extent they impose content-based restrictions on political speech of candidates for judicial office.

15

D. A permanent injunction barring Defendants from enforcing 20 OKLA. STAT. § 1404.1(3);

E. A permanent injunction barring Defendants from enforcing Rule 4.1(A)(12)-(13) of the Code of Judicial Conduct;

F. A permanent injunction barring Defendants from relying on JEAP Opinions 2018-7 and 2026-2 to the extent they impose content-based restrictions on political speech of candidates for judicial office;

G. A preliminary injunction granting the relief specified above during the pendency of this action;

H. Plaintiff's reasonable costs and expenses of this action, including attorneys' fees, per 42 U.S.C. §1988 and all other applicable laws; and

I. All other relief Plaintiff is entitled to.

Dated: May 21, 2026

Respectfully submitted,

*/s/ Ryan Haynie*

Ryan Haynie, OBA No. 32796
OCPA CENTER FOR LAW & LIBERTY
1401 N. Lincoln Blvd.
Oklahoma City, OK, 73104
Telephone: (405) 590-6070
Email: ryan@ocpathink.org

## VERIFICATION

I, Scott Loftis, declare as follows:

1.    I am the Plaintiff in this case.

2.    I have reviewed the complaint.

3.    For the allegations within my personal knowledge, I believe them all to be true.

4.    I declare under penalty of perjury that the foregoing tis true and correct.


Executed on May 21, 2026


_____
Scott Loftis