**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

SCOTT LOFTIS,

      Plaintiff,

v.

RICHARD ROSE, in his official capacity
as Chairman of the Board of the Oklahoma
Council on Judicial Complaints, *et al.*,

      Defendants.

Case No. CV-1172-D

**<u>DEFENDANTS' MOTION TO DISMISS and BRIEF IN SUPPORT</u>**

Taylor P. Henderson, OBA No. 30581
John M. Bunting, OBA No. 31503
OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS
1901 N. Lincoln Blvd.
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-4800
Email: *taylor.henderson@cojc.ok.gov*
     *john.bunting@cojc.ok.gov*

***Attorneys for Defendants***

**Table of Contents**

I.     Introduction and Summary of the Argument …………………………………... 1

II.    Relevant Factual Background …………………………………………………….. 2

III.   Arguments and Authorities …………………………………………………….. 4

       A. Plaintiff lacks Article III standing because he cannot establish
          the element of causation …………………………………………………. 4

          1.  The law governing Article III standing to sue …………………………….. 4

          2.  Plaintiff cannot demonstrate the element of causation
              because Defendants and the Council do not enforce the laws
              being challenged …………………………………………………………... 5

       B. Defendants assert sovereign immunity under the Eleventh Amendment ……... 9

          1.  *Ex parte Young* ………………………………………………………….. 9

          2.  *Ex parte Young* does not apply because Defendants and the Council
              do not enforce, and do not have a sufficient "connection" to the
              enforcement of, the laws being challenged ………………………………. 10

       C. Ka*nsas Judicial Review v. Stout* and *Frank v. Lee* are distinguishable ……… 13

          1.  *Kansas Judicial Review v. Stout* …………………………………………… 13

          2.  *Frank v. Lee* …………………………………………………………… 16

IV.    Request for Relief ……………………………………………………………….. 17

## **Table of Authorities**

**Constitutional Provisions**

Oklahoma Constitution Article VIII …...…………………………...…… 1, 4, 5, 7, 14

**Statutes**

OKLA. STAT. tit. 20, § 1651(2)(b) (OSCN 2026) …………………………………… 6

OKLA. STAT. tit. 20, § 1658 (1997) …………………………………………….…… 8

OKLA. STAT. tit. 20, § 1658(B) (OSCN 2026) …………………………………….… 6

OKLA. STAT. tit. 20, § 1658(E) …………………………………………………….… 6

OKLA. STAT. tit. 20, § 1659 (OSCN 2026) ………………………………………… 6, 17

**Rules**

Oklahoma Code of Judicial Conduct, Rule 2.11 …………..………………...…….... 17

OKLA. STAT. tit. 5, App'x 4A - Rules Governing Complaints on Judicial Misconduct, Rule 3 (OSCN 2026) …………………………………………………………….…... 6

Minn. Rules of Board on Judicial Standards 4(a)(6) and 11(d) (2002) ………………. 15

Minn. Rules of Board on Judicial Standards, Rule 11 ……………………..………… 15

Rules Governing Judicial Misconduct, Rule 3 ………………………..……………… 17

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), 12(b)(6) ………………….………… 17

**Cases**

*Ex parte Young*, 209 U.S. 123 (1908) ……………………..…… 2, 7, 9, 10, 11, 12, 14, 16

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ……………...…..…… 2, 15

*Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) …………..…….. 4

*Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012) ……………………...…… 4

*Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ………………… 4

*Wilson v. Glenwood Intermountain Prop., Inc.*, 98 F.3d 590, 592-93
(10th Cir. 1996) ……………………………………………………………………………... 4

*Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012) …………………………………… 5

*Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) ……………….... 5

*Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1224 (10th Cir. 2008) …………. 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ……………………………….. 5

*Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) …………………………… 5

*In re Judge Anonymous*, 1978 OK 132, ¶ 3, 590 P.2d 1181, 1183 …………………… 6, 8, 15

*See, e.g.*, *In the Matter of Disciplinary Proceedings Concerning Colemen*,
2019 OK 77, ¶¶ 3-5, 454 P.3d 1280, 1282 …………………………………………….. 7

*Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) ……………… 7, 12, 13

*Mattingly v. Okla. Ct. on Jud., Trial Div.*, 2000 OK JUD 1, ¶3, 8 P.3d 943 ………….. 8, 13

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828
(10th Cir. 2007) …………………………………………………………………….......... 9

*Opala v. Watt*, 393 F.Supp.2d 1154, 1159 (W.D. Okla. 2005) …………………………... 9

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
535 U.S. 635, 645 (2002) ……………………………………………………………… 9

*Lewis v. N.M. Dept. Of Health*, 261 F.3d 970 (10th Cir. 2001) ……………………... 10, 11

*Elephant Butte Irrigation District of New Mexico v. Department of the Interior*,
160 F.3d 602 (10th Cir. 1998) ……………………………………………………….... 10

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024) ………………………………………… 11, 13

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) …………………………………... 12, 13

*Council on Judicial Complaints, v. Maley*, 1980 OK 32, ¶ 26,
607 P.2d 1180, 1187 …………………………………………………………….......... 13

ii

*Kansas Judicial Review v. Stout*, 519 F.3d 1107 (10th Cir. 2008) …………..…….. 13, 14, 15

*Frank v. Lee*, 84 F.4th 1119 (10th Cir. 2023) ……………………………………...…… 16, 17

**<u>References</u>**

BLACK'S LAW DICTIONARY (6th ed. 1990) ……………………………………………… 7

1978 OK AG 240 …………………………………………………………………….. 13

Geyh, Alfini & Sample, *Judicial Conduct and Ethics* § 11.02 (6th ed. 2020) ……….… 14

## **DEFENDANTS' MOTION TO DISMISS and BRIEF IN SUPPORT**

### **I.    Introduction and Summary of the Argument**

The Oklahoma Council on Judicial Complaints ("Council") is the state agency responsible for investigating allegations of judicial misconduct against Oklahoma state and municipal court judges and judicial candidates. Defendants are the three individual members of the Council. Defendants have been sued in their official capacity by Plaintiff, who is a candidate for state judicial office.

Plaintiff's lawsuit challenges, on First Amendment grounds, the constitutionality of several provisions of Oklahoma state law that address or limit what a judicial candidate may do or say. Because no action has been taken against Plaintiff to enforce the laws at issue, whether by the Defendants or otherwise, Plaintiff's suit is considered a pre-enforcement challenge. A pre-enforcement constitutional challenge can succeed only if (a) the plaintiff has Article III standing to sue, and (b) the defendants are not protected by sovereign immunity.

In responding to Plaintiff's *Motion for Preliminary Injunction* [Doc. 3], Defendants alerted the Court that they may not be proper parties to this suit, but stated that a temporary injunction may be appropriate "if the Court finds Plaintiff has met his burden." Doc. 10 at p. 6. This Motion to Dismiss argues that Plaintiff lacks standing, that sovereign immunity applies, and respectfully requests that Plaintiff be required to meet his burden to prove otherwise.

As to Article III standing, the plaintiff must prove three elements, including that his injury is traceable to, or caused by, the defendants. This element of causation can be

established only if the Defendants have the authority to enforce the laws being challenged. As to <u>sovereign immunity</u>, *Ex parte Young*, 209 U.S. 123 (1908) teaches that defendants in a pre-enforcement injunctive lawsuit are protected by sovereign immunity unless, among other requirements, they have "some connection" to the enforcement of the law that is being challenged. Thus, a critical question for both standing and sovereign immunity is whether the Defendants and the Council have legal authority to enforce the laws being challenged by Plaintiff. Defendants respectfully submit that they and the Council possess powers of investigation, but not powers of enforcement. If Defendants do not have the power to enforce the laws being challenged, then they are not the proper defendants regardless of whether the substance of Plaintiff's claims have merit.

## II.    Relevant Factual Background

Plaintiff's suit challenges, on First Amendment grounds, two state laws that he claims limit his right to free speech on the campaign trail. Plaintiff filed a *Motion for Preliminary Injunction* [Doc. 3], seeking to enjoin the Council from "enforcing" the laws at issue. Defendants filed a Response [Doc. 10], and the issue is set for hearing on August 5, 2026 [Doc. 12].

Defendants' Response recognized a lack of controlling authority directly on point, but conceded that "if this Court were to analyze and apply [*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002)] as it has been applied by other federal courts, Defendants agree that Plaintiff has demonstrated a likelihood of success on the merits, and therefore they would not oppose a properly-tailored preliminary injunction" as to one of the

2

challenged laws known as the Party Affiliation Rule. However, Defendants' position was subject to several caveats, including the following:

- "A temporary injunction can probably be entered against the Defendants in their official capacities to prevent the Council from *investigating* a violation of the rules and statutes that are at issue in this lawsuit, *if the Court finds Plaintiff has met his burden*." Doc. 10 at p. 6 (*emphasis added*).

- "[T]he Oklahoma Ethics Commission, Committee on Judicial Elections, Oklahoma Supreme Court, and Oklahoma Court on the Judiciary (at a minimum) also have jurisdiction over judicial candidates in some instances. Because none of those entities are defendants in this suit, they would presumably be unaffected by any injunction that may be entered against Defendants or the Council." *Id.*

- "Moreover, looking beyond the preliminary injunction stage, Defendants do not concede at this time that they would be the proper defendants for the remainder of Plaintiff's broader constitutional challenge." *Id.* at p. 7.

- "While the Council's limited powers could be described as having 'some' connection with the enforcement of the Party Affiliation Rule, the Council cannot adjudicate whether a judicial candidate has actually violated the rule. Defendants reserve the right to argue that the adjudicators -- including the Oklahoma Supreme Court or the Oklahoma Court on the Judiciary -- may be the more appropriate or necessary defendants." *Id.*

As they said they would do, Defendants now respectfully ask that the Plaintiff "meet his burden" to demonstrate that standing exists, that sovereign immunity does not apply, and that defendants are the proper parties to the suit.

### III.   Arguments and Authorities

A. **Plaintiff lacks Article III standing because he cannot establish the element of causation.**

1. **The law governing Article III standing to sue.**

Although Article III standing and sovereign immunity are closely related analyses, they are distinct issues that must both be satisfied in order for a plaintiff to proceed in a suit against state government. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) (in suit against school district, analyzing sovereign immunity defense after finding that the plaintiff had standing to sue).

The plaintiff, "as the party seeking to invoke federal jurisdiction, bear[s] the burden of establishing standing." *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012). When standing is challenged, "the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm . . . .To cross the standing threshold, the litigant must explain how the elements essential to standing are met." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

"As a jurisdictional requirement, standing to litigate cannot be waived or forfeited," *id.*, and "may be raised by the court at any time," *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 592-93 (10th Cir. 1996). The Tenth Circuit has found lack of standing even when defendants conceded in the trial court that the plaintiffs had standing,

4

because "parties cannot confer subject matter jurisdiction on the courts by agreement." *Id.* at 593.

To establish Article III standing, a plaintiff must demonstrate all of the following: "(1) that he or she has 'suffered an injury in fact;' (2) that the injury is 'fairly traceable to the challenged action of the defendant;' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011)). "We refer to these three familiar requirements as injury in fact, causation, and redressability." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1224 (10th Cir. 2008). To satisfy the element of causation, the plaintiff must show there is "a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action *of the defendant*, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations omitted) (emphasis added) (quotations omitted). "It is well-established that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to *possess authority to enforce the complained-of provision*." *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) (emphasis added).

### 2. Plaintiff cannot demonstrate the element of causation because Defendants and the Council do not enforce the laws being challenged.

The Council is Oklahoma's sole state agency charged with investigating allegations of judicial misconduct. The Council's powers largely relate to investigation: it can hold

hearings, administer oaths, issue subpoenas, and receive evidence and testimony. *See* OKLA. STAT. tit. 20, § 1658(B) (OSCN 2026). The Council has limited contempt powers: "In the event of contemptuous refusal to obey its lawful orders," it may take steps to maintain order, and "as to contempts not affecting the maintenance of order," the Council may certify the matter to the Chief Justice who shall assign the matter to the district court for trial. OKLA. STAT. tit. 20, § 1658(E); *see In re Judge Anonymous*, 1978 OK 132, ¶ 3, 590 P.2d 1181, 1183. (The orders the Council is allowed to give are solely procedural in nature, such as issuing a subpoena ordering a witness to appear for an interview; the Council has no binding authority on matters of substance.)

At the end of its investigation of a judicial complaint, if it finds no violations of the Code of Judicial Conduct, the Council may dismiss the complaint. *See* OKLA. STAT. tit. 20, § 1651(2)(b) (OSCN 2026). If the Council "finds evidence of misconduct or the appearance of misconduct that does not warrant referral of its findings to the Chief Justice" for discipline, it may issue a warning or letter of caution to the judge or judicial candidate which "shall not constitute an adjudication." OKLA. STAT. tit. 5, App'x 4A - Rules Governing Complaints on Judicial Misconduct, Rule 3 (OSCN 2026). However, if the Council determines that judicial misconduct has occurred and discipline is warranted, it can take no disciplinary action, but rather it must compile findings and refer the matter to an entity with the discretionary authority to invoke the jurisdiction of the Court on the Judiciary, or to the Oklahoma Supreme Court, to potentially impose discipline. *See* Rule 3, Rules Governing Judicial Misconduct, OKLA. STAT. tit. 20, § 1659 (OSCN 2026). However, the Supreme Court can -- and sometimes does -- reject the Council's recommendations.

6

*See, e.g.*, *In the Matter of Disciplinary Proceedings Concerning Colemen*, 2019 OK 77, ¶¶ 3-5, 454 P.3d 1280, 1282 (discussing the non-binding nature of the Council's disciplinary recommendations and the Court's "exclusive jurisdiction to decide discipline for misconduct of a judge not serious enough to require removal or compulsory retirement," and stating that the Court "rejected the Council's recommendation to file a petition for removal" against the judge in question).

Black's Law Dictionary defines "enforce" as "[t]o put into execution; to cause to take effect; to make effective. . . ." BLACK'S LAW DICTIONARY (6th ed. 1990). "Enforcement" is defined as "[t]he act of putting something such as a law into effect; . . . the carrying out of a mandate or command." *Id*. In the discussion of *Ex parte Young*, 209 U.S. 123 (1908) below, Defendants review several decisions which tend to show that "enforcement" refers to (a) authority to take official action that allows, prohibits, or otherwise controls a plaintiff's conduct, or (b) control over those who have such authority, neither of which the Council can do. Because courts review the same facts when determining whether a defendant has enforcement authority for both Article III standing and *Ex parte Young*, Defendants' *Ex parte Young* analysis below is incorporated by reference into this standing argument.[1]

Although the Verified Complaint [Doc. 1] alleges that the Defendants enforce the challenged provisions, this is a bare assertion without supporting facts. The Council and

---

[1] See *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (explaining the similarities between the legal analyses for Article III standing and *Ex parte Young*, then ruling on Defendants' *Young* claim by reference to its standing analysis).

the Defendants consider the authority given to them to constitute investigative power, not enforcement power. *See, e.g.*, *In re Judge Anonymous*, 1978 OK at ¶ 15, 590 P.2d at 1185 ("The Council is powerless to suspend or remove a judge from office; neither can it impose any sanction upon any member of the judiciary. The Council is not a body with authority to adjudicate any matter, but rather it is limited to investigation of judges against whom formal complaint is made.")  Even if the Council believed that Plaintiff was violating the challenged laws, and even if the Council exercised all the powers at its disposal against Plaintiff, Plaintiff would still be free to proceed with his conduct unless and until a separate entity with more authority (such as the Oklahoma Supreme Court) took action. That is because the Council has no power to adjudicate Plaintiff to be in violation of any law, no power to issue a binding order directing Plaintiff to cease or modify his conduct, and no power to require Plaintiff to do anything beyond cooperate with and give evidence for its investigation.

The Council previously had the statutory authority to issue discipline for a brief period of time. In 1997, Section 1658 was amended to grant the Council the power "to issue reprimands and admonitions" subject to the approval of the Chief Justice. *See* OKLA. STAT. tit. 20, § 1658 (1997) (superseded); *Mattingly v. Okla. Ct. on Jud., Trial Div.*, 2000 OK JUD 1, ¶3, 8 P.3d 943. However, in 1999, after the constitutionality of the statute was called into question by the Supreme Court, "the Legislature amended 20 O.S. § 1658 and eliminated the power of the Council on Judicial Complaints to issue reprimands and admonitions under any circumstances." *Mattingly*, 2000 OK JUD at ¶3 and n.2. The fact that the Council's former power to issue discipline was explicitly eliminated is strong

8

evidence that the Council, as it exists today, is not intended to be or capable of being an enforcement entity. If Defendants cannot enforce the laws at issue, then they cannot be the cause of any injury and Plaintiff lacks standing.

**B.**     **Defendants assert sovereign immunity under the Eleventh Amendment.**

**1.**     ***Ex parte Young.***

Under *Ex parte Young*, 209 U.S. 123 (1908), a pre-enforcement suit against a state officer to challenge the constitutionality of a state law may proceed only against a defendant who has "some connection with the enforcement of the act." *Id.* at 157. An officer need not have a "special connection" to the statute, but the officer "must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 157).

The ruling from *Ex parte Young* is an exception from Eleventh Amendment immunity for state government officials. "The rationale behind the *Ex Parte Young* doctrine is that if the underlying act is unconstitutional, and thus void, enforcement of that act is not authorized and is not taken in an official capacity." *Opala v. Watt*, 393 F.Supp.2d 1154, 1159 (W.D. Okla. 2005). A lawsuit can avoid an Eleventh Amendment challenge under *Ex parte Young* if the suit (1) alleges an ongoing violation of federal law, and (2) "seeks relief properly characterized as prospective," which "clearly" includes a request for an injunction. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

      **2.**      ***Ex parte Young* does not apply because Defendants and the Council do not enforce, and do not have a sufficient "connection" to the enforcement of, the laws being challenged.**

As argued in section III(A)(2), *supra*, Defendants and the Council do not have authority to enforce the laws Plaintiff is challenging. The standard under *Ex parte Young* is slightly different than for standing, because *Young* only requires the defendants to have "some connection with the enforcement of" the challenged law. Defendants acknowledged in their *Response to Plaintiff's Motion for Preliminary Injunction* that Defendants and the Council "could" be said to have "some" connection to enforcement of the state laws that Plaintiff is challenging, but they emphasized the limitation of their powers. *See* Doc. 10 at p. 11. Indeed, if interpreted broadly enough, the term "some connection" could encompass a vast swath of persons in state government who were never intended to be subject to defending a constitutional challenge.[2] However, the term should not be interpreted with such breadth, because decisions from the Tenth Circuit appear to limit the *Ex parte Young* exception to (a) state officials who possess the legal authority to allow, prohibit, or otherwise control the plaintiff's conduct in some way, such as by issuing a binding order or denying a permit or license, and (b) state officials who have the authority to control the people in group (a). The Defendants and the Council have no such authority.

---

[2] For a discussion of some of the difficulties in applying *Ex parte Young*, see generally *Lewis v. N.M. Dept. Of Health*, 261 F.3d 970 (10th Cir. 2001) ("In *Elephant Butte Irrigation District of New Mexico v. Department of the Interior*, 160 F.3d 602 (10th Cir. 1998), we discussed at length the *Ex parte Young* doctrine and the federal courts' struggle to define it.").

10

For example, in *Lewis v. N.M. Department of Health*, 261 F.3d 970 (10th Cir. 2001), the plaintiffs sued two employees of the New Mexico Department of Health in their official capacities, alleging that the defendants failed to promptly provide a type of Medicaid healthcare known as "waiver services." *Id.* at 974-75. The court described the defendants as "two state officials exercising considerable control over the implementation and administration of the waiver services under New Mexico's Medicaid plan." *Id.* at 976. Thus, the defendants were partly responsible for determining whether and when plaintiffs received the waiver services. The court found this was sufficient to satisfy *Ex parte Young*. *See id.* at 976, 979.

In *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), *judgment vacated on other grounds*, No. 24-801, 2025 WL 1787695 (U.S. June 30, 2025), plaintiffs sued Oklahoma's Governor, the Commissioner of the Oklahoma Department of Health, and the State Registrar of Vital Statistics to challenge the constitutionality of an Executive Order that limited transgender persons' ability to change their gender on their birth certificate. The defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which the trial court granted. *See id.* at 775. However, the Tenth Circuit reversed the dismissal. Applying *Ex parte Young*, the Tenth Circuit held that all defendants were proper parties to the case because the plaintiffs had sufficiently alleged "some connection" to enforcing the challenged laws. Specifically, the State Registrar of Vital Statistics was the official custodian of state vital records, and was responsible for denying plaintiff's applications to amend their birth certificates. *Id.* at 783. The Commissioner of the Department of Health was responsible for maintaining the state's vital statistics, and

11

supervised other Department of Health employees. *Id.* While the Governor is not always a proper party under *Ex parte Young*, Governor Stitt was found to be the proper party here because he oversees the Department of Health, and he issued the Executive Order and made public comments supporting it. *See id.*

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), reached a similar result. In *Kitchen*, the Tenth Circuit considered whether the state attorney general and governor were proper parties to an action by several Utah residents challenging a state law that banned same-sex marriage and created criminal liability for any county clerk who knowingly issued a marriage license for a prohibited marriage. *Id.* at 1200-1202. The governor and attorney general maintained that they had "ample authority" to ensure the county clerks would comply with the same-sex marriage ban when issuing marriage licenses. *Id.* at 1202. Their position was supported by state law, which charged the governor with supervising ministerial officers and charged the attorney general with supervising the district attorneys that were responsible for filing criminal charges against noncompliant county clerks. *Id.* at 1202-03. Thus, the Tenth Circuit concluded "that the Governor's and the Attorney General's actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials" established "the requisite nexus" between the officials and the challenged law. *Id.* at 1204.

Finally, in *Cressman v. Thompson*, 719 F.3d 1139, 1146 (10th Cir. 2013), a state hearing officer who was responsible for "interpreting and administering" the challenged statute was dismissed from the case, because "the authority to interpret and administer a statute is not the same as the authority to *enforce* a statute."

12

Taken together, the above cases show that state enforcement power appears to refer to (a) authority to take official action to allow, prohibit, or otherwise control a plaintiff's conduct, or (b) control over those who have such authority. The Defendants and the Council were not given those powers. Unlike the Governor in *Fowler* and the Governor and Attorney General in *Kitchen*, the Council neither oversees the entities charged with issuing discipline, nor does it maintain the power to compel compliance in substantive matters. And unlike the Governor in *Fowler*, the Council cannot make public statements or issue public findings. If the Council refers its findings to a disciplining authority, those findings remain confidential until made public by an authority with the discretion to do so, such as the Oklahoma Supreme Court or Court on the Judiciary. 1978 OK AG 240 ¶ 6; *see also Council on Judicial Complaints, v. Maley*, 1980 OK 32, ¶ 26, 607 P.2d 1180, 1187. Rather, the Defendants and the Council are most similar to the dismissed defendant in *Cressman v. Thompson* -- they could investigate Plaintiff Loftis for a potential violation, and in the process they might interpret the laws at issue to come to their own conclusion as to whether a violation has occurred, but they cannot issue a decision or take enforcement action that is binding on him. As discussed in *Mattingly*, 2000 OK JUD at ¶3, the Council once had the power to issue reprimands, but that power was taken away by the Legislature.

**C.    *Kansas Judicial Review v. Stout* and *Frank v. Lee* are distinguishable.**

      **1.    *Kansas Judicial Review v. Stout***

Defendants wish to distinguish two cases in which the Tenth Circuit found enforcement authority to exist. The first is *Kansas Judicial Review v. Stout*, 519 F.3d 1107 (10th Cir. 2008). Each state has its own version of Oklahoma's Council -- that is, some

13

agency or board in charge of handling complaints of misconduct against state court judges and judicial candidates. Kansas's version is the Kansas Commission on Judicial Qualifications ("Kansas Commission"). In *Stout*, members of the Kansas Commission were sued in their official capacities by a group of judicial candidates who asserted a constitutional challenge similar to the one Plaintiff makes in this case.

The Tenth Circuit found the *Stout* plaintiffs to have Article III standing to sue, and did not conduct a sovereign immunity/*Ex parte Young* analysis. *See id.* at 1115. While the court spent little time analyzing the issue of enforcement authority, it generally described the Kansas Commission's duties as follows: "The Commission, also established, by the Kansas Supreme Court, is charged with investigating allegations against judges and candidates, and recommending disciplinary action when necessary." *Id.* at 1111-1112 (*emphasis added*). Although that description could also apply to the Oklahoma Council, the Tenth Circuit went on to describe additional important powers held by the Kansas Commission that the Council does not have. First, "[i]f the investigatory panel [of the Kansas Commission] finds probable cause of a violation of the Code, it refers the matter to a seven-member hearing panel for a trial-like proceeding." *Id.* at 1112. This shows that the Kansas Commission is a "two-tier" disciplinary system: one panel investigates complaints of misconduct, and a second panel within the Kansas Commission (not housed within the Kansas Supreme Court) adjudicates the charges and determines some final dispositions. *See* Geyh, Alfini & Sample, *Judicial Conduct and Ethics* § 11.02 (6th ed. 2020) (discussing the distinctions between one- and two-tier systems). The Oklahoma Council -- a one-tier disciplinary agency -- may conduct fact-gathering hearings and

14

interviews, but does not conduct adjudicatory trial-like proceedings where the judge is allowed to present evidence and witnesses, because the Oklahoma Council does not have powers of adjudication. *See, e.g.*, *In re Judge Anonymous*, 1978 OK at ¶ 15, 590 P.2d at 1185 ("The Council is powerless to suspend or remove a judge from office; neither can it impose any sanction upon any member of the judiciary. The Council is not a body with authority to adjudicate any matter, but rather it is limited to investigation of judges against whom formal complaint is made.")

Second, similar to Oklahoma's judicial disciplinary system, the Kansas Supreme Court imposes judicial discipline subject to a recommendation by the Kansas Commission. *See Stout*, 519 F.3d 1112. However, unlike the Oklahoma Council, in addition to the Kansas Supreme Court's authority, the Kansas Commission's hearing panel has the ability to issue an admonishment *on its own*. *See id.* The power to admonish is an important power that the Oklahoma Council does not have, and the ability to issue binding orders that have binding effect on a judge or judicial candidate appears to take the Kansas Commission's powers across the line from investigation into enforcement. While the Oklahoma Council can issue binding subpoenas, those are merely matters of procedure -- the Council has no binding authority on matters of substance.

The same distinction exists between the Oklahoma Council and the Minnesota Board of Judicial Standards ("Minnesota Board"), whose chairperson was sued in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). The *White* opinion refers to Minn. Rules of Board on Judicial Standards 4(a)(6) and 11(d) (2002). *Id.* at 768. In turn, Minn. Rules of Board on Judicial Standards, Rule 11 provides that the Minnesota Board

15

may "issue a public reprimand" on its own, or may submit the matter to the Minnesota Supreme Court to impose other types of sanctions, up to removal from office.

###    2.    *Frank v. Lee*

*Frank v. Lee*, 84 F.4th 1119 (10th Cir. 2023) involved a suit against Wyoming's Secretary of State and a County Clerk in their official capacities to challenge the constitutionality of an election law. The court described the defendants as the "the chief elections officers with statutory duties to administer elections consistent with Wyoming's elections laws," with statutory powers and duties including maintaining uniformity in elections, promulgating rules to maintain orderly voting, and referring suspected election code violators for prosecution. *Id.* at 1132-33, 1135. The court also found that one defendant fielded calls for advice on enforcement of the electioneering laws, while another defendant's staff members had asked voters to comply with the election laws and had physically removed political signs that they believed violated the law. *Id.* at 1133. In total, the court found these to be enforcement powers, and therefore found the plaintiffs had standing and had established the immunity exception from *Ex parte Young*. *Id.* at 1133, 1135. The court explicitly rejected the defendants' argument that they lacked enforcement authority because they did not oversee criminal prosecutions of election law violations. *Id.* at 1133.

While comparing election officials to judicial investigators is not an apples-to-apples comparison, some similarities and important distinctions exist between the powers afforded to the Wyoming election officials which were found to be enforcement, and the powers given to the Council. The Wyoming election officials' power to refer violations of

16

the law for prosecution appears similar to the Council's power to refer judges and judicial candidates to the Supreme Court for discipline. However, the *Frank* opinion gave no indication that the election officials' powers were intended by the Wyoming legislature to be limited to investigation, which is supported by the fact that the officials or their staff members actually removed campaign signs that they believed violated the law in question. By contrast, the statutes and rules defining the Council specifically define its role as being to "ensure independent investigation" of judicial complaints. *See* Rule 3, Rules Governing Judicial Misconduct, OKLA. STAT. tit. 20, § 1659 (OSCN 2026).

This lack of enforcement authority can be illustrated from the procedures that would follow should the Council determine a judicial officer were disqualified from presiding over a case but continued to do so *ultra vires*. In that scenario, the Council would issue findings to the Oklahoma Supreme Court to institute disciplinary proceedings for violation of Rule 2.11 of the Code of Judicial Conduct. The Council could not, however, reassign the matter to a different judge or stop the judicial officer from proceeding down what the Council considers the wrong path. Overall, the election officials in *Frank v. Lee* appear to have a broader mandate, empowering them to physically remove a sign they deemed improper, which explains why their powers were found to constitute enforcement.

### IV.   Request for Relief

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), 12(b)(6), and all applicable authority, Defendants respectfully request that this Motion be granted, that the Complaint be dismissed with prejudice as to them, and that they be given any other relief to which they are entitled.

17

Respectfully submitted by:


*s/ John M. Bunting*
Taylor P. Henderson, OBA No. 30581
John M. Bunting, OBA No. 31503
OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS
1901 N. Lincoln Blvd.
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-4800
Email: *taylor.henderson@cojc.ok.gov*
      *john.bunting@cojc.ok.gov*

**Attorneys for Defendants**


## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.


*s/ John M. Bunting*
John M. Bunting

18