**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SCOTT LOFTIS,<br><br>*Plaintiff*,<br><br>v.<br><br>RICHARD ROSE, in his official capacity as Chairman of the Oklahoma Council on Judicial Complaints; ANGELA AILLES BAHM, in her official capacity as Vice Chairwoman of the Oklahoma Council on Judicial Complaints, and ZACK TAYLOR, in his official capacity as a member of the Oklahoma Council on Judicial Complaints,<br><br>*Defendants*. | Case No. CV-01172-D |

**PLAINTIFF'S RESPSONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND BREIF IN SUPPORT**

## INTRODUCTION

This case asks whether candidates for judicial office in Oklahoma check their First Amendment rights at the Capitol door when they file to run and, relatedly, whether Oklahoma voters must be left in the dark about the candidates they are expected to vote for. The answer to both questions is a resounding "no."

Plaintiff Scott Loftis is an attorney in northern Oklahoma and filed this spring to run for District Judge for Kay and Noble Counties. During the months leading up to the "primary election," the Judicial Ethics Advisory Panel issued an advisory opinion that concluded candidates for judicial office are prohibited from describing themselves as "Conservative" when speaking to potential voters. JEAP Op. 2026-2, at 2, ECF No. 4.3.

The advisory opinion, as well as the laws the panel used to justify its opinion, put Loftis in a difficult position. Even if he wins the election, he could be removed for nothing more than exercising political speech as he helps voters in his district cast an informed vote. The challenged laws chilled Loftis's speech during the weeks leading up to the primary. On June 16, 2026, Loftis made the runoff and will again stand for election in November. Loftis's speech continues to be chilled by the challenged provisions.

After responding to Loftis's motion for a temporary injunction, Defendants, members of the Council on Judicial Complaints (collectively "the Council"), moved to have his complaint dismissed under theories of standing and sovereign immunity. Both theories hinge on the argument that the Council does not enforce the challenged policies, and the Council's arguments both fail for the same reason. The Council is *substantially* involved in policing speech by candidates for judicial office. Though they may not have the final say in whether discipline—including removal from office—is administered, they *do* have the final say in determining whether a complaint should be dismissed or advanced to another body. If the Council is enjoined from enforcing the speech codes challenged in this suit, candidates like Loftis could engage in political speech knowing neither the Oklahoma Supreme Court nor the Court on the Judiciary will ever even hear a complaint based on the challenged policies. Any such complaint would have to be dismissed by the Council at the investigation stage.

**LEGAL STANDARD**

Motions to dismiss for lack of standing can be facial or factual. A facial attack questions "the sufficiency" of the complaint—whether the complaint plausibly alleges standing. *Chichakli v. Samuels*, 2016 WL 11447755, at *2 (W.D. Okla. Mar. 10, 2016). Courts

address facial attacks by applying the liberal notice-pleading standard: confining themselves to the complaint, assuming its factual allegations are true, reading general allegations to include the necessary specifics, and construing everything in the plaintiff's favor. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147-48 & n. 4 (10th Cir. 2015); *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). A factual attack, by contrast, questions "the veracity" of a fact needed to prove standing. *Chichakli*, 2016 WL 11447755, at *2. Courts address factual attacks by considering outside evidence and deciding, *after discovery*, who is right *by a preponderance of the evidence*. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (emphasis added).

This Court should treat the Council's motions as a facial attack. Its motion challenges Loftis's standing on the grounds that it does not enforce the laws being challenged, thereby not satisfying the traceability prong of standing. Mot. 5-9. This argument is a question of law that turns on the face of the complaint, and the Council presents no outside evidence. *See Const. Party of Penn v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (arguments not supported by external evidence cannot be factual attacks because "[a] factual attack requires a factual dispute"); *See also*, *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004).

At the pleading stage, the burden to show causation is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). For a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice" to survive a motion to dismiss because the Court presumes that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 168.

With respect to sovereign immunity, the Supreme Court has said, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (cleaned up). The Tenth Circuit has concluded a "complaint satisfies the *Ex parte Young* exceptions three requirements" when it; (1) sues "state officials rather than the state itself," (2) alleges "an ongoing violation of federal law," and (3) seeks "prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1168 (10th Cir. 2012). It is error to apply "the plausibility standard applicable to Rule 12(b)(6) to conclude that the *Ex parte Young* exception [does] not apply. *Id.*

**ARGUMENT**

The Council moves to dismiss for lack of "Article III standing," claiming it does not "enforce" the laws being challenged and therefore did not cause Loftis's injury. Mot. 4-9, ECF No. 13. And, for the same reason, the Council moves to dismiss under the theory of sovereign immunity. Mot. 9-13. As discussed above, the burden to show causation at this stage in case is "relatively modest," *Bennett*, 520 U.S. at 171 (1997), and the Court need look no further than the Complaint where Plaintiff alleges three times Defendants *do* enforce the challenged provisions under the color of state law. Ver. Complaint at ¶¶ 62, 71, & 79, ECF No. 1. Still, out of abundance of caution, Loftis submits three reasons he has standing as a matter of law.

**I. Loftis has standing to bring his claims against the Council on Judicial Complaints.**

Article III standing is met when the plaintiff meets three elements.

> **First**, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." **Second**, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." **Third**, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up) (emphasis added). The Council does not challenge Loftis's injury but explicitly challenges Loftis's standing under the second element—what is referred to as "causation" or "traceability." Mot. 4-9. To show causation, Article III simply requires a "substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). When the plaintiff "is himself an object of the action . . . , there is ordinarily little question that the action or inaction has caused him injury." *Lujan*, 504 U.S. at 561-62. Because of the Council's substantial involvement in the complaint process, the logical connection between traceability and redressability, and the inconveniences of the complaint process itself, there is—at the very least—a substantial likelihood the Council caused Loftis's injury.

### A. The Council's substantial involvement in the complaint process creates a substantial likelihood Defendants caused Loftis's injury.

The substantial role the Council plays in judicial complaints is reason enough to deny its motion. Consider the anatomy of a complaint against a candidate for judicial office for violation of 20 OKLA. STAT. § 1404.1 (the "Party Affiliation Rule"). First, a complaint is made to the Council on Judicial Complaints. After an investigation, the Council has three options. *First*, if the Council feels like removal from office is warranted, it passes the case to

the Court on the Judiciary. 20 OKLA. STAT. § 1659. *Second*, if the Council does not believe the complaint warrants removal but does believe some discipline is appropriate, it forwards the case to the Oklahoma Supreme Court. 5 OKLA. STAT. App'x 4-A – RULES GOVERNING COMPLAINTS ON JUDICIAL MISCONDUCT, Rule 3. *Finally*, if the Council feels no further action is necessary it can dismiss the complaint with or without a warning or letter of caution. 20 OKLA. STAT. § 1651(2)(b).

The Council on Judicial Complaints is a gatekeeper for the entire complaint process—a fact counsel for Defendants acknowledged at the temporary injunction hearing.[1] As the Council noted in its brief, it is "Oklahoma's *sole state agency* charged with investigating allegations of judicial misconduct." Mot. 5 (emphasis added). The Council further states at the conclusion of its investigations, "if it finds no violations of the Code of Judicial Conduct, the Council may dismiss the complaint. Mot. 6 (citing 20 OKLA. STAT. § 1651(2)(b)). In other words, the Council recognizes it has the power to stop investigations dead in their tracks. An injunction entered against the Council prohibiting it from enforcing the challenged policies would effectively prohibit such a complaint from ever reaching one of the other state agencies tasked with administering discipline.

The Council's causation argument "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain

---

[1] The Council has since pointed out that the Committee on Judicial Elections also has the ability to enforce Rule 4 of the Code of Judicial Conduct with a cease-and-desist letter and order the candidate to issue a retraction or public apology. *See* 5 Okla. Stat. App'x 4-B, RULES FOR THE COMMITTEE ON JUDICIAL ELECTIONS, Rule 5. Rule 6, however, recognizes the Committee has no authority to issue discipline which is "specifically reserved to the Council on Judicial Complaints or the Oklahoma Bar Association." *Id.* at Rule 6.

of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (cleaned up). "While . . . it does not suffice if the injury complained of is th[e] result [of] the independent action of some third party not before the court, that does not exclude injury produced by *determinative* or coercive effect upon the action of someone else." *Id.* (cleaned up) (emphasis added). Defendants may not have the ability to *coerce* the Oklahoma Supreme Court or Court on the Judiciary to act, but its own actions are certainly *determinative* in the sense that the Council is the gatekeeper for all complaints against judicial officers.

The complaint process does not occur without the involvement of the Council. It exercises independent authority in the initiation and advancement of the complaint process. That qualifies as "fairly traceable" for standing purposes. That is "some connection" for *Ex parte Young*. The gatekeeping function alone, as the Court inquired about at the preliminary injunction hearing, is enough to satisfy causation.

**B. The logical connection between traceability and redressability makes it substantially likely Defendants caused Loftis's injury.**

The Supreme Court has recognized traceability and redressability are "often flip sides of the same coin."' *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 288 (2008)). The Court went on to note when the "defendant's action causes an injury[,] enjoining the action . . . will typically redress that injury." *Id.* at 381. The inverse is also true.

If enjoining the action of the Council will redress the injury, then it follows the Council is at lease *one* cause of the injury. If, as the Council suggests, Loftis's injuries are caused by the Supreme Court or the Court on the Judiciary, then an injunction against the Council would not redress the injury. But, as demonstrated above, enjoining the Council has the

effect of cutting investigations off at the source. The Council does not challenge redressability which means the members acknowledge enjoining the Council from enforcing the challenged policies. would redress Loftis's injury. Logic dictates Loftis's injury is fairly traceable to the Council.

### C. The Council possesses significant investigative powers which make it substantially likely it caused Loftis's injury.

Administrative investigations, alone, are enough to chill speech. This is especially true when dealing with election-related investigations. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (recognizing a complainant "may time their submissions to achieve maximum disruption of their political opponents while calculating that an ultimate decision on the merits will be deferred until after the relevant election"). As Defendant's brief points out, the Council can "hold hearings, administer oaths, issue subpoenas, and receive evidence and testimony." Mot. 5-6. The threat of even being put through an investigation is sufficient to conclude Loftis's injuries are fairly traceable to the Council.

In *Bantam Books, Inc. v. Sullivan*, the Supreme Court recognized that even a state actor without power to "regulate or suppress" obscenity could nevertheless engage in "informal censorship" that warrants injunctive relief. 372 U.S. 58, 66-67 (1963). In reaching that decision, the Court "considered things like: the commission's coordination with law enforcement and its authority to refer matters for prosecution; the notices themselves, which were 'phrased virtually as orders' containing 'thinly veiled threats to institute criminal proceedings' if the distributor did not come around; and the distributor's reaction to the notices and followup visits." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 177 (2024) (citing *Bantam Books).* Here, the Council has the authority—and duty—to investigate violations of

the challenged provisions and coordinate with agencies that can impose discipline. A panel of former judges associated with the Council[2] has issued an advisory opinions that read like court orders suggesting Loftis's speech is unlawful. And Loftis has self-censored because of the Council's duty to investigate violations of the challenged policies.

Lawyers may be desensitized to the significant inconvenience subpoenas and hearings put on individuals, but they are very burdensome nevertheless. In this case, Loftis would need to spend time away from his busy law practice and campaign to come to Oklahoma City for a hearing on whether he has violated some judicial speech code. This is not to say the process is unlawful. But here the otherwise lawful process could be used for the improper purpose of censoring Loftis's speech. *See id.* at 176 (holding a government official can share her views freely and criticize particular beliefs in the hopes of persuading others, she may not use the power of her office to punish or suppress disfavored expression"). This coercive effect—even if implicit—makes Loftis's injury fairly traceable to those who administer the process, namely the Council.

## II. Defendants' sovereign immunity defense is without merit.

As Defendants discussed in their brief, *Ex parte Young* is a "well-established exception [to sovereign immunity], which permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). The Council's challenge to *Ex parte Young* hinges on whether it has "a particular duty to 'enforce' the statute in question and a demonstrated willingness to

[2] The advisory opinions of the panel are hosted on the website for the Council, and the Council receives a copy of every opinion. *See* 5 OKLA. STAT. App'x 4-D, RULES OF THE JUDICIAL ETHICS ADVISORY PANEL, Rule 8.

exercise that duty." Mot. 9 (citing *Wagnon*, 476 F.3d at 828). The Tenth Circuit has recognized the overlap between the analysis for standing and sovereign immunity in *Cressman v. Thompson*, 719 F.3d 1139, 1146 n. 8 (10th Cir. 2013). In *Cressman*, the Tenth Circuit cited favorably from the Ninth Circuit:

> Whether [state] officials are, in their official capacities, proper defendants in [a] suit is really the common denominator of two separate inquiries: first, whether there is the requisite causal connection between their responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress [i.e., Article III standing]; and second, whether ... jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*, which requires "some connection" between a named state officer and enforcement of a challenged state law.

*Id*. While the analysis in Section I may be sufficient for the Court to find Loftis has met his burden under *Ex parte Young*, Plaintiff offers the following to rebut Defendants arguments regarding their enforcement power. Recognizing this analytical overlap, some of the cases addressed below were decided on standing but can nevertheless be applied to *Ex parte Young*.

**A. Defendants have a duty to enforce the challenged provisions.**

The Tenth Circuit is clear the Defendant need not have a "special connection" to the challenged provision—only a particular duty to enforce the provision. *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (internal quotation omitted).

But the Council's enforcement duties in this case *are* noted in law. "[T]he Council on Judicial Complaints is authorized to receive and investigate complaints regarding . . . a judicial candidate as defined in 20 O.S. 2021, § 1404.1." 5 OKLA. STAT. App'x 4-A – RULES CONCERNING COMPLAINTS ON JUDICIAL MISCONDUCT, Rule 3. Even when the Committee

on Judicial Elections decides a complaint warrants discipline, it must send those cases to the Council on Judicial Complaints or the Oklahoma Bar Association.

What the Tenth Circuit has made clear in delineating the "special duty" rule is a general enforcement power is insufficient. For example, the general enforcement power of a governor to see that the laws are faithfully executed is insufficient. *See Bishop v. Oklahoma*, 333 Fed. Appx. 361, 365 (10th Cir. 2009) (collecting cases). The Council possesses *much* more than general enforcement power. In fact, its enforcement power is very specific—limited to complaints against sitting judges and candidates for judicial office.

The cases cited by the Council support the conclusion that it has a particular duty to enforce the provision. Like the defendants in *Lewis v. N.M. Department of Health*, 261 F.3d 970 (10th Cir. 2001), the Council exercises "considerable control" over the disciplinary process for judges and judicial candidates. *Cressman* stands for the proposition that an agency officer tasked with interpreting a law is not the same as enforcing it. 719 F.3d at 1146. If Loftis had sued the staff for the Council, perhaps that case would be on point. But the Council's duty is laid out in statute and discussed in its brief, like the governor and attorney general defendants in *Kitchen v. Herbert*, 755 F.3d 1193, 1202 (10th Cir. 2014).

**B. The Council enforces the challenged provisions.**

In *Ex parte Young*, the Supreme Court recognized,

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes.

209 U.S. 123, 157 (1908). The Court acknowledged this would be a convenient way of getting to the merits but was nevertheless incongruent with the sovereign immunity enjoyed by states. *Id.* As discussed above, the Council has a statutory duty to initiate and advance complaints against candidates for judicial office.

Though the Tenth Circuit has never defined what it means by "enforce," the term is not particularly unclear. For example, the phrase "law enforcement" is a term in common usage. It includes beat cops, detectives, forensic investigators, and prosecutors. But in the course of a criminal investigation and prosecution, the constitutionally prescribed decisionmaker to convict and sentence is a judge or jury. No one upstream, however, claims they are not enforcing the law. The same is true here. The fact that the Council is not the final say in whether to discipline or remove a judge is not enough to conclude it do not enforce the challenged provisions.

## CONCLUSION

The Court should deny the Council's motion to dismiss. Furthermore, upon finding Plaintiff has standing to sue and is not barred by sovereign immunity, the Court should grant Plaintiff's motion for preliminary injunction.

Respectfully submitted,

*/s/ Ryan Haynie*

Ryan Haynie, OBA No. 32796
OCPA CENTER FOR LAW & LIBERTY
1401 N. Lincoln Blvd.
Oklahoma City, OK, 73104
Telephone: (405) 590-6070
Email: ryan@ocpathink.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case the Clerk of Court will transmit a Notice of electronic filing to those registered participants of the ECF System.

*/s/ Ryan Haynie*
Ryan Haynie