**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SCOTT LOFTIS,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ROSE, in his official capacity as Chairman of the Board of the Oklahoma Council on Judicial Complaints, *et al.*,<br><br>Defendants. | Case No. 26-CV-1172-D |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

**1. No facts supporting standing were alleged in the *Verified Complaint*.**

The parties seem to agree that the issues of standing and sovereign immunity raised in the *Motion to Dismiss* turn largely on whether the Defendants and Council have authority to enforce the laws being challenged. While the burden of proving standing is always on the Plaintiff, Defendants agree that the burden is lower at the Motion to Dismiss stage than on Summary Judgment. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). However, the burden is not so low that a plaintiff may overcome it simply by reciting the legal conclusion that he wants the Court to reach. Rather, the plaintiff must allege facts to demonstrate standing, and only then must the Court assume the allegations to be true for purposes of a Motion to Dismiss. *See, e.g.*, *id.* at 561 ("At the pleading stage, general *factual allegations* of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim . . .") (*cleaned up*) (*emphasis added*); *Cressman v.*

*Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (at the Motion to Dismiss stage, a court "must accept as true all *material allegations* of the complaint, and must construe the complaint in favor of the complaining party.") (*internal quotations and citations omitted*) (*emphasis added*).

Plaintiff's *Response* [Doc. 15 at p. 4] argues that his pleading burden is met since the *Verified Complaint* thrice alleges that Defendants have enforcement authority. Those three allegations state: "Defendants enforce this unconstitutional [statute/rule/opinions] under color of state law." *See Verified Compl.*, Doc. 001 at ¶¶ 62, 71, 79. Defendants submit that these allegations merely state a legal conclusion, and do not meet Plaintiff's burden any more than if Plaintiff had alleged: "Standing exists in this case." A factual allegation would be an assertion that Defendants take some action that constitutes enforcement, like issuing a binding order. No facts were pled in the *Verified Complaint* to demonstrate Defendants' enforcement.

**2. No facts supporting standing could be alleged.**

The *Verified Complaint*'s lack of factual allegations is not necessarily fatal to Plaintiff's standing argument since "[t]he complaint should not be dismissed unless it appears that appellant could 'prove no set of facts in support of his claim which would entitle him to relief.'" *Jenkins v. Keithen*, 395 U.S. 411, 425 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (*internal citation omitted*). Defendants' *Motion to Dismiss* [Doc. 13 at pp. 5-7] listed the Council's main powers, then discussed why none of those powers should be considered "enforcement." Defendants submit that Plaintiff's *Response* has failed to show otherwise, because any fact that could be alleged would not constitute enforcement.

The *Response* suggests that Defendants' "substantial involvement in the complaint process" constitutes enforcement when considered as a whole. In this regard, Plaintiff argues [Doc. 15 at pp. 5-8] that an injunction against the Council would have the effect of preventing a judicial complaint[1] from being forwarded by the Council up the chain, and if enjoining Defendants would prevent the alleged harm, then the Defendants must be the proper parties. That argument has some theoretical appeal, but should be rejected because it contradicts the law on this issue. Theoretically, Plaintiff's goal could also be achieved if an injunction were issued against the Council's mail room to prevent a judicial complaint from being physically received, or against the Council's administrative staff to prevent the complaint from being docketed and assigned a case number for investigation. However, injunctions of that nature are not proper, because the law limits injunctions to those who have enforcement authority -- not to everyone whose job constitutes a stop along the way to enforcement. That is why not all gatekeepers[2] are proper defendants for a pre-enforcement constitutional challenge.

---

[1] All references to a judicial complaint are hypothetical only, and not meant to suggest that a complaint has actually been filed against Plaintiff.

[2] The Council clarifies two statements contained in the *Response* to avoid future confusion. First, the *Response* on pp. 5-6 states the Council may refer matters to the Court on the Judiciary. The Council itself does not have power to invoke the Court on the Judiciary, but rather it may only refer the matter to one of 6 people or entities that have the discretionary authority to invoke the jurisdiction of that court. *See* OKLA. STAT. tit. 20, § 1659 (OSCN 2026). Second, as discussed on p. 6 of the *Response*, the Council could be characterized as the gatekeeper between a judicial complaint that may be filed against Defendant Loftis (a candidate for district judge) and the Supreme Court or Court on the Judiciary. However, Oklahoma Constitution Article VIII, Section 1 applies to appellate court judges and allows for impeachment or other discipline without the involvement of the Council.

The *Response* places particular emphasis on the Council's power to dismiss complaints. *See* Doc. 15 at p. 6. While the dismissal of a complaint is surely a meaningful event to the person who filed the complaint and the respondent judge, all that a dismissal accomplishes is to maintain the *status quo*, since it leaves both the complaining party and the respondent judge in the same positions they were in before the complaint was filed. In that sense, dismissing a judicial complaint is best characterized as a lack of enforcement. By contrast, government agencies that have been found to possess enforcement authority often have the power to issue or revoke a license or benefit, or issue a binding and enforceable order, which are acts that change the *status quo* by placing parties in different positions than they were before the actions were taken. *See Mot. to Dismiss*, Doc. 13 at pp. 11-13.

*Bennett v. Spear*, 520 U.S. 154, 169 (1997) does not hold otherwise. The Response cites *Bennett* for the proposition that state actors can be found to have enforcement authority even if they are not the "very last step in the chain of causation," so long as their actions have "determinative or coercive effect upon the action of someone else." *Bennett* involved a "biological opinion" issued by U.S. Fish and Wildlife Service relating to the impact of an irrigation project on endangered fish. *Id.* at 157. Plaintiffs challenged the biological opinion, arguing that if it were to be implemented, their economic interests would be harmed. *See id.* The defendants (federal government entities) essentially argued that plaintiffs lacked standing because the biological opinion only constitutes advice to the U.S. Bureau of Reclamation (the agency that operates the irrigation project), and plaintiffs would suffer no injury unless and until the Bureau actually accepted and acted upon the

biological opinion. *Id.* at 168. The Court rejected the defendants' characterization of the biological opinion, finding that the Bureau of Reclamation rarely deviates from a biological opinion's recommendations, and may only do so if it specifically articulates its reasons for disagreeing with the opinion. *See id.* at 169. More importantly, if the Bureau follows the biological opinion's recommendations, then the opinion "constitutes a permit authorizing the action agency to 'take' the endangered or threatened species"; but if the Bureau disregards the biological opinion and follows another course of action, the Bureau and its employees could be committing a felony if their chosen course of action turns out to be wrong because they would be "taking" the endangered species without a permit. *See id.* at 170. Because of these practical realities, the Supreme Court found that the biological opinion has a "virtually determinative effect" on the Bureau of Reclamation's conduct, even if it is technically advisory. *See id.* The Oklahoma Council on Judicial Complaints' recommendations are much different -- they are truly non-binding on the Supreme Court both in theory and in practice. *See, e.g.*, *In the Matter of Disciplinary Proceedings Concerning Colemen*, 2019 OK 77, ¶¶ 3-5, 454 P.3d 1280, 1282 (rejecting the Council's recommendation and writing, "[w]hile this Court utilizes the investigation and screening assistance of the Council on Judicial Complaints pursuant to Rule 3, the Council's Finding of Facts, Conclusions of Law and Recommendation for Discipline are not binding on the Court.").

The Response also cites to *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), as support for its argument that a government agency that technically lacks enforcement authority can still make a plaintiff's life difficult. However, *Bantam* involved a state

censorship commission whose conduct appeared to exceed its legal authority and who appeared to purposefully give the false impression that it had enforcement authority that it did not have. *See id.* at 67-68 ("But though the Commission is limited to informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression of publications deemed 'objectionable' and succeeded in its aim."). There is no suggestion that Defendants or the Council on Judicial Complaints engage in behavior that exceeds their authority. *Bantam* could also stand for the general proposition that even a threat of enforcement action can be enough to scare or chill a person into voluntarily changing their behavior, which is a proposition that Defendants agree with. However, even if one assumes that some Oklahoma judges or judicial candidates will self-censor to avoid enforcement of a law that they believe is unconstitutional, it does not follow that the Council on Judicial Complaints -- rather than, for example, the Oklahoma Supreme Court or Committee on Judicial Elections -- would be the entity that would or could do the enforcing.

**3. The Council's powers are more akin to a grand jury than to a law enforcement agency.**

Plaintiff's *Response* [Doc. 15 at p. 12] argues that the Council is similar to a law enforcement agency. The Council and police share somewhat similar powers of investigation, but the analogy falters from there because it does not account for the many coercive enforcement powers that police possess such as the powers to detain, to arrest, and to use force. The Council possesses none of those coercive powers.

A more fitting analogy would be to compare the Council to a grand jury. *See In re Judge Anonymous*, 1978 OK 132, ¶ 35, 590 P.2d 1181, 1188 ("We believe that the function of the Council on Judicial Complaints is analogous in function to that of a grand jury in this State."). Grand juries have powers to investigate, gather evidence and testimony, and issue subpoenas, and they may issue indictments if they find sufficient evidence that a crime has occurred. These powers are quite similar to the Council's authority as outlined in the Motion to Dismiss. A grand jury is not commonly considered "law enforcement" as police are.

Recognizing the similarities between the Council and a grand jury also helps to show why Defendants' *Ex parte Young* argument has more merit than Plaintiff might believe. *See* Doc. 15 at p. 9. *Ex parte Young*, 209 U.S. 123, 163 (1908), specifically states that the power to enjoin certain government officials from enforcing an unconstitutional law does not "include power to prevent any investigation or action by a grand jury." The context of *Ex parte Young* was different, and the Council does not argue that the above-quoted passage, by itself, is dispositive of the pending *Motion to Dismiss*. However, *Ex parte Young* does give additional support to the argument that a purely investigative body is not the proper defendant in a suit seeking to prevent a law's enforcement. Defendants have always understood the Council to be an investigative body, and they respectfully submit that Plaintiff has not met his burden to prove otherwise.

Respectfully submitted by:

*s/ John M. Bunting*
Taylor P. Henderson, OBA No. 30581
John M. Bunting, OBA No. 31503
OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS
1901 N. Lincoln Blvd.
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-4800
Email: *taylor.henderson@cojc.ok.gov*
*john.bunting@cojc.ok.gov*

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/ John M. Bunting*
John M. Bunting