**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SCOTT LOFTIS,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ROSE, in his official capacity as Chairman of the Oklahoma Council on Judicial Complaints, *et al.*,<br><br>Defendants. | ) | Case No. CIV-26-1172-D |

**ORDER**

Before the Court is Defendants Richard Rose, Angela Ailles Bahm, and Zack Taylor, in their official capacities as Chairman, Vice Chairwoman, and member of the Oklahoma Council on Judicial Complaints', combined Motion to Dismiss. [Doc. No. 13]. Plaintiff Scott Loftis filed a Response [Doc. No. 15], to which Defendants filed a Reply [Doc. No. 16]. Also, before the Court is Plaintiff's Motion for Preliminary Injunction and Brief in Support. [Doc. Nos. 3, 4]. Defendants filed their combined Response. [Doc. No. 10]. Plaintiff did not file a reply, and the time to do so has passed.

On August 5, 2026, the Parties and their counsel of record appeared before the Court for an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction. [Doc. No. 14]. Accordingly, the Motions [Doc. Nos. 3, 4, 15] are fully briefed and at issue.

**BACKGROUND**

Plaintiff is an attorney who is a candidate for an Oklahoma district judge position for the judicial district encompassing Kay and Noble counties. [Doc. No. 1, at p. 3].

Plaintiff alleges that during his campaign he would like to inform voters that he is a "conservative," and a "law and order" and "pro-life" judicial candidate. *Id.* at p. 9-10, 13. However, Plaintiff alleges that he is unable to make such statements because various Oklahoma statutes and the Oklahoma Rules on Judicial Conduct prohibit him from doing so. [Doc. No. 1]. Specifically, he alleges that Okla. Stat. tit. 20, § 1404.1(3) and Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(6) (collectively the "Party Affiliation Rule") unconstitutionally prohibit him from informing voters that he is a conservative. *Id.* He argues that such restriction is an impermissible content-based restriction in violation of his First Amendment right to freedom of speech. *Id.*

The Party Affiliation Rule provides:

> A person who is not a judicial officer but is a candidate for a judicial office shall comply with the standards enumerated below, and any violation of these standards shall constitute grounds for the removal by the Court on the Judiciary of a person who is not a judicial officer elected to a judicial office with or without disqualification to hold a judicial office in the future.
>
> . . .
>
> 3. While a candidate for a judicial office, making publicly known in his campaign material or speeches, or knowingly permitting others to make publicly known, either directly or by implication, his political party affiliation.

Okla. Stat. tit. 20, § 1404.1(3). Additionally, Rule 4.1(A)(6) provides:

> A) Except as permitted by law, or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate shall not:
>
> . . .

> (6) publicly identify himself or herself as a candidate of a political organization.

Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(6).

Similarly, Plaintiff also alleges that Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(12)-(13) ("Pledges, Promises, or Commitments Clause") prohibits him from publicizing that he is a "conservative," and "pro-life" judicial candidate. [Doc. No. 1]. He argues that the Pledges, Promises, or Commitments Clause is unlawfully overbroad, and an unlawful restriction as applied to his speech in violation of his constitutional right to freedom of speech. *Id.* The Pledges, Promises, or Commitments Clause states:

> (A) Except as permitted by law, or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate shall not:
>
> . . .
>
> (12) make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court; or
>
> (13) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(12)-(13).

Plaintiff also challenges the constitutionality of two of the Judicial Ethics Advisory Panel's Advisory Opinions, Advisory Opinion No. 2018-7 and Advisory Opinion No. 2026-2, on the same basis that he challenges the Party Affiliation Rule and the Pledges, Promises, or Commitments Clause. [Doc. No. 1]. In Advisory Opinion No. 2018-7, the Oklahoma Judicial Ethics Advisory Panel determined that a judicial candidate would

violate the Party Affiliation Rule if he published a book and permitted an article to be included in the book that referred to him as a "conservative hero." *Jud. Ethics Opinion 2018-7*, 434 P.3d 17 (Okla. Jud. Eth. 2018). Additionally, in Advisory Opinion No. 2026-2, the Oklahoma Judicial Ethics Advisory Panel was tasked with determining, in relevant part, whether a judicial candidate may use the word "conservative" in his campaign materials or in public appearances or speeches. *Jud. Ethics Opinion 2026-2*, No. 2026-2, 2026 WL 1365977, at *2 (Okla. Jud. Eth. May 12, 2026). The panel determined that both the Pledges, Promises, or Commitments Clause and the Party Affiliation Rule prohibited a judicial candidate from referring to himself during his campaign as a "conservative." *Id.*

Defendants are officers/members of the Oklahoma Council on Judicial Complaints. The Council is a state agency in the Executive Branch whose mission is to receive and investigate complaints alleging misconduct by Oklahoma judges and judicial candidates, and to recommend discipline, if warranted. Okla. Stat. tit. 5, App'x 4A, Rule 3; Okla. Stat. tit. 20, § 1651. The Council is the sole state agency charged with investigating allegations of judicial misconduct. However, the Council does not have the authority to adjudicate violations or impose discipline. *See* Okla. Stat. tit. 5, App'x 4A, Rule 3. If the Council determines that a violation has occurred and discipline is warranted, it may issue a letter of caution, and may refer violations to either the Court on the Judiciary or the Oklahoma Supreme Court. *Id.*; *see also* Okla. Stat. tit. 20, § 1659.

Defendants are not bound by the Oklahoma Judicial Ethics Advisory Panel's opinions. *See Jud. Ethics Opinion 2018-7*, 434 P.3d 17 (Okla. Jud. Eth. 2018); *Jud. Ethics Opinion 2026-2*, No. 2026-2, 2026 WL 1365977 (Okla. Jud. Eth. May 12, 2026) ("The

Opinions of the Oklahoma Judicial Ethics Advisory Panel are advisory only. … The advisory opinion shall not be binding on the Council on Judicial Complaints or Court on the Judiciary in the exercise of their judicial discipline responsibilities.")

Defendants filed their motion to dismiss arguing Plaintiff lacks standing to bring his claims as he has failed to sufficiently allege that Defendants caused his purported injury, and because they have Eleventh Amendment immunity. [Doc. No. 13]. Specifically, they argue that Plaintiff lacks standing and they enjoy Eleventh Amendment immunity because they do not have the authority to enforce the Party Affiliation Rule or Pledges, Promises, or Commitments Clause. *Id*. In response, Plaintiff argues that he has standing because Defendants have enforcement authority, as they make the determinations on whether the provisions at issue were violated and recommend whether discipline is warranted. [Doc. No. 15]. Moreover, Plaintiff argues that Defendants do not have Eleventh Amendment immunity because they enforce the rules at issue. *Id.* Indeed, he argues that they act as gatekeepers in determining whether disciplinary action should be taken for violations of the rules. *Id.*

In Plaintiff's motion for preliminary injunction, he asserts that Defendants should be preliminarily enjoined from enforcing the Party Affiliation Rule, the Pledges, Promises, or Commitments Clause, and the two Advisory Opinions during the pendency of this lawsuit. [Doc. Nos. 3, 4]. Defendants argue that if dismissal is not warranted, then Plaintiff likely has demonstrated, based on *Republican Party of Minn. v. White*, 536 U.S. 765 (2002) and its application by certain federal courts of appeals, that he will likely succeed on the merits of his claim that the Party Affiliation Rule is an unconstitutional restriction of his

freedom of speech. [Doc. No. 10]. However, Defendants argue that Plaintiff has not and cannot demonstrate that the Pledges, Promises, or Commitments Clause is unconstitutional. *Id.* at p. 13-20. Additionally, Defendants argue that the issues regarding the Advisory Opinions are moot, as the advisory opinions are not binding, and because they disagree with Advisory Opinion 2026-2's conclusions and will not enforce it. *Id.* at p. 20-21.

## STANDARD OF DECISION—MOTION TO DISMISS

### I. Standing.

"To establish standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Pino v. Oliver*, 186 F.4th 750, 756-57 (10th Cir. 2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "A plaintiff has standing to raise a pre-enforcement challenge where he alleges 'an intention to engage in a course of conduct' (1) that is 'arguably affected with a constitutional interest,' (2) is 'proscribed by a statute,' and (3) 'there exists a credible threat of prosecution thereunder.'" *Id.* at 757-58 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

### II. Immunity pursuant to the Eleventh Amendment.

"'The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity'" and bars citizens from suing both states and state officials in their official capacity. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735-36 (10th Cir. 2024) (quoting *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021)). "But

*Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law." *Id.* at 736. *Ex parte Young* applies only if the state official "'ha[s] some connection with the enforcement of the challenged statute.'" *Id.* (cleaned up) (quoting *Hendrickson*, 992 F.3d at 965). This connection need not be particularly special, but *Ex parte Young* "'requires something more than a mere general duty to enforce the law.'" *Id.* at 739 (quoting *Hendrickson*, 992 F.3d at 965). Rather, the official "must 'have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* at 736 (emphasis added) (cleaned up). "An official enforces a law when they 'clearly ... assisted or currently assist in giving effect to the [contested] law.'" *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (footnote omitted)).

## ANALYSIS

### I. Standing.

The Court agrees Plaintiff has sufficiently alleged that he suffered an injury in fact that is concrete, particularized, and imminent. Indeed, Plaintiff has alleged that he has been prevented from publicizing statements such as his political affiliation during his judicial campaign out of fear that Defendants would find his statements violate the Party Affiliation Rule and Pledges, Promises, or Commitments Clause and recommend he be disciplined. Moreover, Defendants do not dispute that Plaintiff has adequately alleged the third element of standing—that Plaintiff's injury would likely be redressed by judicial relief. The Court finds Plaintiff has sufficiently asserted that a preliminary injunction preventing Defendants

from investigating violations of the provisions at issue, and recommending discipline for violations of those provisions, would permit him to inform voters of his political affiliation, and thus, redress the issue. Therefore, for purpose of determining whether Plaintiff has standing to assert his claims, the only issue that remains is whether Plaintiff's injury was likely caused by Defendants.

"The principle of causation for constitutional standing requires a plaintiff's injury to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)). A plaintiff does not have to show that "the defendant was the proximate cause of its injury. Nor does it require a showing that a defendant's actions are the very last step in the chain of causation." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (citing *Bennet v Spear*, 520 U.S. 154, 169 (1997)). "Rather, at the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Id.* (citing *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012)).

Moreover, "when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson*, 500 F.3d at 1110 (citing *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) (When "plaintiff seeks a declaration of the unconstitutionality

of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.”).

Here, Defendants argue that because they do not have the authority to discipline Plaintiff for violations of the Party Affiliation Rule or the Pledges, Promises, or Commitments Clause, they do not enforce them, and thus, Plaintiff cannot show he has standing. Plaintiff argues, and the Court agrees, that Defendants investigate whether the provisions were violated and are the gatekeepers for whether discipline is ordered. Indeed, at the hearing, Defendants conceded that they act as the gatekeepers. Although Defendants may not be the final link in the chain in determining whether a violator should be disciplined, they are clearly a significant actor in the process. Accordingly, Defendants have a sufficient connection with the enforcement of the provisions, and thus, Plaintiff has demonstrated he has standing to bring his claims.

**II. Immunity pursuant to the Eleventh Amendment**.

It is undisputed that Plaintiff seeks prospective relief from state officers in their official capacities for an alleged ongoing violation of federal law. Thus, the issue of immunity turns on whether Defendants have any enforcement connection to the challenged statutes.

Like standing, for the exception to Eleventh Amendment immunity recognized in *Ex parte Young* to apply, the defendants "'must have some connection with the enforcement' of the challenged statute." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n. 8 (10th Cir. 2013) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). "An official enforces

a law when they 'clearly ... assisted or currently assist in giving effect to the [contested] law.'" *Free Speech Coal., Inc.*, 119 F.4th at 736 (quoting *Prairie Band Potawatomi Nation*, 476 F.3d at 828 (footnote omitted)).

As noted earlier, Defendants assist in giving effect to the Party Affiliation Rule and Pledges, Promises, or Commitments Clause because they determine whether violations of those provisions are investigated, and are the gatekeepers for deciding whether discipline for such violations is recommended. Therefore, Defendants are not entitled to Eleventh Amendment immunity. Accordingly, Defendants' motion to dismiss is denied.

**STANDARD OF DECISION—MOTION FOR PRELIMINARY INJUNCTION**

"To obtain a preliminary injunction the right to relief must be clear and unequivocal.'" *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1181 (10th Cir. 2013), *aff'd*, 573 U.S. 682 (2014) (quotation and citation omitted). To prevail on a motion for a preliminary injunction the movant must demonstrate: "(1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." *Id.* at 1128. In First Amendment cases, the first factor, likelihood of success on the merits, "will often be the determinative factor." *Id.* at 1145. This is because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (quotation and citation omitted). Further, when a law is unconstitutional, the interest of the government does not outweigh a plaintiff's interest in his constitutional rights. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Lastly, "it is always in the public interest to

prevent the violation of a party's constitutional rights." *Id.* at 1132 (quotation and citation omitted).

**ANALYSIS**

**I. Likelihood of Success on the Merits.**

**A. Party Affiliation Rule.**

The Party Affiliation Rule prohibits a judicial candidate from publicizing his political affiliation while he is a candidate for a judicial office. *See* Okla. Stat. tit. 20. § 1404.1(3) and Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(6). Specifically, Okla. Stat. tit. 20, § 1404.1(3) states:

> A person who is not a judicial officer but is a candidate for a judicial office shall comply with the standards enumerated below, and any violation of these standards shall constitute grounds for the removal by the Court on the Judiciary of a person who is not a judicial officer elected to a judicial office with or without disqualification to hold a judicial office in the future.
>
> . . .
>
> 3. While a candidate for a judicial office, making publicly known in his campaign material or speeches, or knowingly permitting others to make publicly known, either directly or by implication, his political party affiliation.

*Id.* Additionally, Rule 4.1(A)(6) provides:

> A) Except as permitted by law, or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate shall not:
>
> …
>
> (6) publicly identify himself or herself as a candidate of a political organization.

Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(6). "Political organization" is defined as "a political party or other group sponsored by or affiliated with a political party or candidate, the principal purpose of which is to further the election or appointment of candidates for political office." Okla. Stat. tit. 5, App'x 4, Terminology.

Plaintiff argues that the Party Affiliation Rule is unconstitutional because it is a content-based restriction on his freedom of speech. Specifically, he argues that it not only prohibits him from publicizing his political affiliation, but also from discussing issues that might imply his political affiliation. [Doc. No. 4, at p. 7]. He asserts that it prohibits him from campaigning as the "conservative, law-and-order" candidate. *Id.* at p. 4. He contends that this prohibition is directly in violation of his First Amendment right to freedom of speech and contrary to the Supreme Court's holding in *White*, 536 U.S. 765.

Defendants argue that the Party Affiliation Rule is constitutional. However, they concede that if the Court applies the findings and holding in *White* similarly to other courts, then Plaintiff has likely met his burden of demonstrating a likelihood of success on the merits of his claim. *See White*, 536 U.S. 765; *see also Siefert v. Alexander*, 608 F.3d 974 (7th Cir. 2010); *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010).

At issue in *White* was the constitutionality of Minnesota's judicial canon—the Announce Clause, which provided that "'a candidate for a judicial office, including an incumbent judge,'" shall not "'announce his or her views on disputed legal or political issues.'" *White*, 536 U.S. at 768 (quoting Minn. Code of Judicial Conduct, Canon 5(A)(3)(d)(i) (2000)). In striking down Minnesota's announce clause, the Court stated the following about the standard of review:

> As the Court of Appeals recognized, the announce clause both prohibits speech on the basis of its content and burdens a category of speech that is at the core of our First Amendment freedoms—speech about the qualifications of candidates for public office. The Court of Appeals concluded that the proper test to be applied to determine the constitutionality of such a restriction is what our cases have called strict scrutiny.

536 U.S. at 774 (quotation and citation omitted).

In applying strict scrutiny, the Court found that Minnesota had a compelling state interest in preserving judicial "impartiality" to the extent "impartiality" meant a "lack of bias for or against either party to the proceeding." *Id.* at 775-77. However, the Court found that the Announce Clause was not sufficiently narrowly tailored because it did "not restrict speech for or against particular parties, but rather speech for or against particular issues." *Id.* at 776-77. The Court acknowledged that "when a case arises that turns on a legal issue on which the judge (as a candidate) had taken a particular stand, the party taking the opposite stand is likely to lose," but that is not due to "any bias against that party" because "[a]ny party taking that position is just as likely to lose." *Id.* at 776–77. Thus, the Court found that the Announce Clause was an unconstitutional restriction on the plaintiffs' First Amendment right to freedom of speech.

"'The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Terry v. Drummond*, 183 F.4th 1281, 1293 (10th Cir. 2026) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "It has long been recognized that the First Amendment needs

breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn[.]" *Id.* (quotation and citation omitted).

A content-based regulation "target[s] speech based on its communicative content," restricting discussion of a subject matter or topic. *Reed*, 576 U.S. at 163. "As a general matter," a content-based regulation is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (quotation and citation omitted). To show that a restriction on speech is narrowly tailored, the state must show that it "does not unnecessarily circumscrib[e] protected expression." *White*, 536 U.S. at 775 (quotation and citation omitted).

Here, the Party Affiliation Rule is a content-based restriction as it prohibits a judicial candidate from making statements regarding his political affiliation, and thus, restricts speech based on its content. Defendants do not assert that the Party Affiliation Rule serves any compelling state interest. However, comment one to the Party Affiliation Rule provides, in relevant part, that "[t]he State of Oklahoma has a compelling interest in maintaining the independence, integrity and impartiality of the judiciary, thus enhancing public confidence in the judicial system." Okla. Stat. tit. 5, App'x 4, Rule 4.1 n. 1. Stated otherwise, the Party Affiliation Rule purportedly serves the compelling state interest of the judiciary having a "lack of bias for or against either party to the proceeding." *White*, 536 U.S. at 775.

However, like the canon at issue in *White*, the Court finds that the Party Affiliation Rule is not sufficiently narrowly tailored to serve that compelling interest. Indeed, the Party

Affiliation Rule suppresses too much speech because it prohibits judicial candidates from announcing their position on many issues by not allowing them to state the political party with which they affiliate. *See Carey*, 614 F.3d at 201-02 (finding that Kentucky's version of the party affiliation clause was an unconstitutional restriction on the plaintiff's freedom of speech because it prohibits candidates from informing voters of their position on many issues by not allowing them to state the party platform with which they affiliate, which is a "shorthand way of announcing one's views on many topics."). Moreover, the Party Affiliation Rule is not sufficiently narrowly tailored because it is also underinclusive. The rule does not prohibit judicial candidates from revealing their membership in any other type of organization or interest group that may also take positions on issues that are frequently associated with politics or political parties. *Id.* Accordingly, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits of his claim regarding the Party Affiliation Rule.

**B. Pledges, Promises, or Commitments Clause.**

The Pledges, Promises, or Commitments clause states:

> (A) Except as permitted by law, or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate shall not:
>
> . . .
>
> (12) make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court; or
>
> (13) in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

Okla. Stat. tit. 5, App'x 4, Rule 4.1(A)(12)-(13). "Impartial" is defined as "absence of bias or prejudice in favor, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Okla. Stat. tit. 5, App'x 4, Terminology.

Plaintiff argues that the Pledges, Promises, or Commitments Clause is unconstitutional because it is overbroad on its face and as applied to him. [Doc. No. 4, at p. 11]. Specifically, he alleges that the Pledges, Promises, or Commitments Clause is unconstitutional because it prohibits him from making the same comments as the Party Affiliation Rule, and would prohibit him from describing himself as "pro-life" or an "originalist." [Doc. No. 4, at p. 11-12]. However, Plaintiff concedes there is a way that the Pledges, Promises, or Commitments Clause could be interpreted to be constitutional, as he acknowledges, for instance, he could not promise to always find in favor of the prosecution. *Id.* at p. 11.

Defendants argue that a preliminary injunction is not warranted because Plaintiff has not demonstrated that he is likely to succeed on the merits as he has not, and cannot, show that the Pledges, Promises, or Commitments Clause is unconstitutional. [Doc. No. 10, at p. 13-20]. Defendants argue Plaintiff has not demonstrated that it is unconstitutional on its face, because he has not shown any particular injury. *Id.* at p. 17-19. Specifically, they argue that it does not prohibit Plaintiff from discussing his personal views on legal, political, or other issues, such as referring to himself as a conservative. Rather, it prohibits judicial candidates "from committing or appearing to commit themselves to ruling a

particular way if a particular party, issue, or case comes before them." *Id.* at p. 14. Moreover, Defendants argue that it is not unconstitutional as applied to Plaintiff because all of the statements Plaintiff argues the clause prohibits him from making are permitted, so long as he "adheres to the rule's requirements and makes it clear that he . . . has not pre-determined any matter or already decided to reach any particular result." *Id.* at p. 16.

**1. Overbreadth.**

"An overbreadth challenge is a facial challenge to a speech-restricting statute on First Amendment grounds, and, if successful, it results in the invalidation of the entire statute." *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1196-97 (D.N.M. 2024). "To succeed, the challenged statute must regulate substantially more expression than the First Amendment allows governments to regulate." *Id.* (citing *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981)). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Terry*, 183 F.4th at 1293 (citing *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotation marks omitted)).

The Tenth Circuit recently explained that the test for determining overbreadth requires two steps. *Terry*, 183 F.4th at 1293. The Tenth Circuit provided that:

> "[t]he first step 'is to construe the challenged statute' to determine whether it covers protected speech." *United States v. Streett*, 83 F.4th 842, 852 (10th Cir. 2023) (quoting *Williams*, 553 U.S. at 293). This first step proceeds from the common-sense premise that a court must "determine what [the law] covers" before it "can do anything else with these facial challenges[.]" *Moody v. NetChoice, LLC*, 603 U.S. 707, 725 (2024) (first alteration in original) (quoting *Hansen*, 599 U.S. at 770).

> The second step is "to determine whether the unconstitutional applications of the statute are 'substantially disproportionate to the statute's lawful sweep.'" *Streett*, 83 F.4th at 852 (quoting *Hansen*, 599 U.S. at 770). "For the statute to be unconstitutionally overbroad, its 'unconstitutional applications must be realistic, not fanciful[.]'" *Id.* at 853 (quoting *Hansen*, 599 U.S. at 770); *see also Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) ("[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."). A "lopsided ratio" of unconstitutional applications to constitutional ones suggests impermissible overbreadth. *Hansen*, 599 U.S. at 770. The upshot is, in this "singular context, even a law with 'a plainly legitimate sweep' may be struck down in its entirety. But that is so only if the law's unconstitutional applications *substantially* outweigh its constitutional ones." *Moody*, 603 U.S. at 723-24 (emphasis added). "The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (alteration in original) (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)).

*Id.* at 1293-94.

Although the Tenth Circuit has not directly addressed whether the Oklahoma Pledges, Promises, or Commitments Clause is constitutional, the Court in reviewing Kansas' exceedingly similar version, commented about it positively. *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1247 (10th Cir. 2009). The Court stated that "[w]hile we do not prejudge the issue, the narrowing language of the new canons appears to substantially reduce the potential that new Canon 4.1(A)(6) [—Kansas' version of the Pledges, Promises, or Commitments Clause—] will chill the plaintiffs' future speech." *Id.*

The first step of the overbreadth inquiry requires the Court to construe the Pledges, Promises, or Commitments Clause. Although no Oklahoma court has interpreted the clause, Defendants, officials of the enforcing agency, have. *See Pino*, 186 F.4th at 761 ("'Administrative interpretation and implementation of a regulation are … highly relevant' and federal courts 'must … consider any limiting construction that a state court or enforcement agency has proffered.'") (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989)). The Court agrees with Defendants that the Pledges, Promises, or Commitments Clause clearly prohibits judicial candidates "from committing or appearing to commit themselves to ruling a particular way if a particular party, issue, or case comes before them." [Doc. No. 10, at p. 14].

Furthermore, the Court finds that the Pledges, Promises, or Commitments Clause does not prohibit Plaintiff from identifying his political party affiliation or referring to himself as a "law and order" candidate. Moreover, it does not prohibit him from informing potential voters that he is "pro-life" or an "originalist," but rather prohibits him from committing to always ruling for a particular party, ruling a particular way on an issue, or ruling a particular way on a certain case. Indeed, comment 13 to the Pledges, Promises, or Commitments Clause provides that "statements or announcement of personal views on legal, political, or other issues . . . are not prohibited." Okla. Stat. tit. 5, App'x 4, Rule 4.1 cmt. 13. Rather, when "making such statements, a judge should acknowledge the overarching judicial obligation to apply and uphold the law, without regard to his or her personal views." *Id.* Accordingly, the Pledges, Promises, or Commitments Clause does not

prohibit Plaintiff from referring to himself as a conservative, pro-life, or originalist judicial candidate, but, rather, from committing to rule a certain way.

Moreover, Plaintiff has not carried his burden at step two, as he has failed to establish the Pledges, Promises, or Commitments Clause's unconstitutional applications are "substantially disproportionate to the statute's lawful sweep." *Terry*, 183 F.4th at 1295 (citing *United States v. Hansen*, 599 U.S. 762, 770 (2023)) Indeed, "[t]his requires a court to assess a law's unconstitutional uses and compare them to its 'valid reach.'" *Id*.

Here, Plaintiff offers no plausible examples of the Pledges, Promises, or Commitment Clause's unconstitutional applications and fails to accurately account for its "lawful sweep." Plaintiff's failure in this regard warrants denial of his request for a preliminary injunction because he has failed to establish a likelihood that he would prevail on the merits of his claim. *See Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1153 (10th Cir. 2020) (finding the district court did not "abuse its discretion in denying Plaintiffs a preliminary injunction, because they failed to establish a likelihood that they would prevail on the merits of their facial overbreadth claim" when the plaintiffs "did not specifically address, in any substance how the ordinance is overbroad. Nor did they attempt to compare [its] . . . permissible and impermissible applications.").

**2. As-Applied.**

When a party asserts an as-applied challenge, a court "tests the application of [a law] to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248-49 (10th Cir. 2023) (quotations omitted). "[A]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends

that it is not so under the particular circumstances of the case." *United States v. Harrison*, 153 F.4th 998, 1007 (10th Cir. 2025) (quotation and citation omitted).

Plaintiff's as-applied challenge fails for the same reasons as his overbreadth challenge. He has not provided the Court with any examples of speech that the Pledges, Promises, or Commitments Clause prohibits him from expressing. Accordingly, Plaintiff has failed to demonstrate that he is likely to succeed on the merits of his claim that the Pledges, Promises, or Commitments Clause is unconstitutional. Thus, a preliminary injunction enjoining Defendants from enforcing the Pledges, Promises, or Commitments Clause is not warranted.[1]

**C. The Advisory Opinions.**

Plaintiff challenges the constitutionality of two advisory opinions: *Jud. Ethics Opinion 2018-7*, 434 P.3d 17 (Okla. Jud. Eth. 2018) and *Jud. Ethics Opinion 2026-2*, No. 2026-2, 2026 WL 1365977, at *2 (Okla. Jud. Eth. May 12, 2026). Because the Court finds that Plaintiff is likely to succeed on the merits of his claim regarding the Party Affiliation Rule, the Court need not decide whether Defendants' adoption and enforcement of Advisory Opinion 2018-7 would be constitutional. Indeed, if Defendants are preliminarily enjoined from enforcing the Party Affiliation Rule against Plaintiff, then they could not adopt an advisory opinion that recommends enforcing the same rule.

---

[1] The Court need not and does not consider the remaining preliminary injunction factors as to the Pledges, Promises, or Commitments Clause, as Plaintiff has failed to demonstrate that he is likely to succeed on the merits of his claim. *See State v. U.S. Env't Prot. Agency*. 989 F.3d 874, 884 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors.")

In Advisory Opinion 2026-2, the Oklahoma Judicial Ethics Advisory Panel determined, in relevant part, that the Pledges, Promises, or Commitments Clause prohibited a judicial candidate from referring to himself as a "conservative" during his campaign. *Jud. Ethics Opinion 2026-2*, 2026 WL 1365977, at *2. Defendants have represented that "they will not enforce" Advisory Opinion 2026-2 because they disagree with the Advisory Opinion's interpretation of the clause's prohibition. [Doc. No. 10, at p. 20]. Defendants therefore argue that Plaintiff cannot succeed on his claim, because the issue is moot. *Id.*

"Unlike constitutional mootness, [prudential mootness] does not address a court's power to grant relief, but rather a court's discretion in the exercise of such power." *Eaves v. Polis*, 167 F.4th 1304, 1311 (10th Cir. 2026) (citation omitted). "Even if a case is not constitutionally moot, a court still *may* rely on its remedial discretion to conclude that the benefit of the injunctive (or declaratory) relief is too slight or speculative to justify granting such relief." *Id.* (original emphasis).

"The party seeking prospective relief . . . has the burden of showing relief is needed because there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* at 1312 (quotation and citation omitted). "Thus, where a defendant asserts subsequent events have rendered a plaintiff's claim(s) for injunctive relief moot . . . to avoid dismissal on the basis of prudential mootness, plaintiff bears the burden of establishing a recurrent violation of the wrongs about which he complained is more than an abstract possibility, such that the court may grant him some meaningful relief." *Id.* (citations omitted).

In light of Defendants' rejection of Advisory Opinion 2026-2, Plaintiff has not carried his burden to show that his claim is not prudentially moot. Indeed, he fails to make any argument regarding how, under the circumstances, Defendants' potential adoption and enforcement of Advisory Opinion 2026-2 is more than an abstract possibility. Accordingly, Plaintiff has also failed to demonstrate a likelihood of success on the merits as to his claim regarding Advisory Opinion 2026-2. Thus, Plaintiff's motion for a preliminary injunction enjoining Defendants from enforcing the Advisory Opinions is denied.

**II. Irreparable Harm.**

"The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Heideman*, 348 F.3d at 1190 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Because Plaintiff has shown a likelihood of success on his claim that the Party Affiliation Rule violates his First Amendment freedoms, he has demonstrated irreparable harm.

**III. Balance of Harms.**

"A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) (citing *Hobby Lobby*, 723 F.3d at 1145).

Here, Defendants' interest in enforcing the Party Affiliation Rule does not outweigh Plaintiff's interest in protecting his constitutional right of freedom of speech. Thus, as to the Party Affiliation Rule, Plaintiff has also satisfied the balance of harms factor.

**IV. Public's Interest.**

"Finally, under the fourth prong for a preliminary injunction, Plaintiff must show that the requested injunction is not adverse to the public interest." *Id.* at 1255 (citation omitted). "It is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citing *Hobby Lobby*, 723 F.3d at 1145). Thus, granting Plaintiff's motion for preliminary injunction as to Defendants' enforcement of the Party Affiliation Rule is not adverse to the public's interest.

**CONCLUSION**

Plaintiff has demonstrated that a preliminary injunction enjoining Defendants from investigating complaints regarding his purported violation(s) of the Party Affiliation Rule occurring while he is or was a candidate for judicial office, and enjoining Defendants from recommending he be disciplined for such violations during the pendency of this litigation, is warranted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. No. 13] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction [Doc. Nos. 3, 4] is **GRANTED IN PART AND DENIED IN PART** as set forth herein. Defendants are hereby preliminarily enjoined from investigating complaints regarding Plaintiff's purported violation(s) of the Party Affiliation Rule occurring while he is or was a candidate for judicial office, and preliminarily enjoined from recommending Plaintiff be

disciplined for such violations. This preliminary injunction shall remain in full force and effect until this action can be determined on the merits or until further order of the Court.

**IT IS SO ORDERED** this 9th day of October, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE